THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DOMINICK FRANCIS DELORIO, Appellant.

Third Department, March 11, 1970.

*Joe Schapiro* for appellant.

*Spencer G. Feldmann, District Attorney,* for respondent.

Cooke, J. This is an appeal from a judgment of the County Court of Madison County, rendered November 7, 1968, upon a verdict convicting defendant of the crime of robbery in the first degree.

During the morning of March 9, 1968, Charles Bauer, a 66-year-old chicken farmer, was found dead in front of the garage on his property off the Schoolheimer Road in the City of Oneida. A button, found near the garage, had been torn from the bib of his overalls. There were tears over the left pocket of his shirt and the button over said pocket was ripped off. Although he customarily carried his wallet in his left shirt pocket, none was found upon his person. He had multiple contusions and lacerations about the face and head, his jaw and two ribs were fractured and there was blood about his face and on his clothes. The Medical Examiner of Madison County, who examined the body and performed an autopsy, testified that Bauer died of a combination of inhalation of blood and cerebral concussion. He was of the opinion that Bauer lived for a while after being injured because he bled and breathed thereafter. He estimated that death occurred between 12 and 18 hours prior to his arrival at 10:20 A.M. on March 9 and the certificate of death, which he filed, indicated an injury at 8:30 P.M. and death at 9:30 P.M. on the day before.

Bauer's pickup truck was located near the intersection of Canal and Peterboro Streets in Canastota, about 50 feet from Hart's gas station. In talking to Vincent Tornatore, an employee there, on the afternoon of March 9, 1968, Chief Murphy of the Oneida Police noticed Delorio leave the station and start downtown. His hand was swollen and, after Murphy advised him of his constitutional rights, defendant said he had been in a fight at the Ivy Grill the day before at about 5:00 P.M.

After going to police headquarters, Murphy advised defendant that the bartender at the Ivy Grill stated there had been no fight there, whereupon Delorio said that plaster fell on his hand from the ceiling of his room at the Hotel Oneida on the night of March 8. In producing a receipt showing lodging at said hotel to support his story, the operator's license of decedent was found in defendant's wallet. Murphy knew of his own knowledge that Delorio had no driver's license of his own. About $21 was located in his possession. Although a quantity of plaster was picked up in the hotel room Delorio occupied, a domestic who had painted the room testified that the ceiling plaster was tight.

Tornatore worked at the station during the evening of March 8, 1968 and, although uncertain of the exact time, estimated that

he first saw his acquaintance, Delorio, approach the station, heading for the wash rooms from the direction of Canal Street, at approximately 6:45 to 7:45 P.M. Defendant's hand was swollen, appeared to have blood on it and he said he got in a fight at the Ivy Grill. Tornatore directed him to the ladies' room where he stayed about five minutes. Delorio said he came to Canastota in a pickup truck which he parked around the corner as a rod was going on it. He showed Tornatore the back of a driver's license, the conviction stub of which had no marks, and said it was his. After being at the station 10 or 15 minutes, he asked for Tornatore's father's truck to go to Graziano's to get something to eat. Tornatore let him have it and he returned in about 15 or 20 minutes. At about 9:30 he told a customer at the station that he had a truck around the corner with a broken valve and was waiting to get it fixed.

Delorio arrived at the station on March 9 at about 11:00 A.M., asked Tornatore and his boss if they had heard about a killing in Oneida on Schoolheimer Road and requested that the radio be tuned to the Oneida station to see if there were any bulletins. During the afternoon, defendant's left thumbprint was discovered on the left door of Bauer's truck and a police officer found Bauer's wallet in the wastebasket in the ladies' room of Hart's station, together with paper tissue containing human bloodstains.

Two Sheriff's deputies at the Madison County Jail, from which Delorio had been released on March 5, 1968, testified that he came to the jail on the 8th around 7:15 P.M. and, during his 10-to 20-minute stay, pulled some shotgun shells with deer slugs from his pocket, rubbed his hand and said he had been in a fight.

Occupants of the Bauer farm found a sawed-off shotgun in a shed on the property some four months after Bauer's death, identified as belonging to Albert Smith and kept by him at the property of his father-in-law, Friske, located about a mile from the Bauer place. Delorio had been married to Friske's daughter until an annulment in 1964. A ballistics expert determined that the shotgun shell, which had been picked up near the shed on the Bauer place on March 9, was a reloaded shell and had been fired by this same firearm. Shells found in the Friske home and those in the gun had been reloaded and each displayed identical properties, including powder, slug and wads. Friske found that $20 to $25 in half dollars from a bank kept in a dresser with the shells were also missing and the bank was found to have defendant's left thumbprint on it. On March 6, 1968 at about 1:30 A.M., Delorio paid for his night's lodging with 12 fifty cent pieces and registered again before 9:00 P.M. that same day paying his

room rent in advance with 10 half-dollars. Defendant was released from the Madison County Jail on March 5, 1968 with three cents in his pocket.

Although indicted for murder contrary to subdivision 3 of section 125.25 of the Penal Law and robbery in the first degree contrary to subdivision 1 of section 160.15, the jury returned a verdict of not guilty of murder but guilty of robbery, first degree. Appellant claims inconsistency. The first section above, in defining what is commonly known as a felony murder, provides in part: " A person is guilty of murder when: * * * 3. Acting either alone or with one or more other persons, he commits or attempts to commit robbery * * * and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants." The latter, in defining robbery in the first degree, reads in part: " A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: 1. Causes serious physical injury to any person who is not a participant in the crime ". The two counts in the indictment did not have identical elements, so that a finding of guilty on one but not on the other would not be truly repugnant, as opposed to being merely inconsistent (cf. *People* v. *Bullis,* 30 A D 2d 470, 472). Even considering the verdicts as inconsistent, the acquittal here on one count does not bar conviction on the other (cf. *People* v. *Hollenbeck,* 9 A D 2d 983). Each count in the indictment is to be regarded as a separate indictment and consistency in the verdict is not necessary here (*Dunn* v. *United States,* 284 U. S. 390, 393; *People ex rel. Troiani* v. *Fay,* 13 A D 2d 999, 1000; see Code Crim. Pro., § 443-a). Moreover, defendant is in no position to urge that the verdict is inconsistent, not having excepted to the court's charge that defendant could be found guilty of robbery in the first degree and not guilty of murder (*People* v. *Steffens,* 12 A D 2d 962, 963; *People* v. *Sciascia,* 268 App. Div. 14, affd. 294 N. Y. 927). The evidence amply sustains the conviction of robbery in the first degree.

In support of his alibi that he was not at the scene of the crime, appellant depends on testimony as to times he and the victim were seen on the day of perpetration. However, Tornatore, on whom he relies, testified he was not paying any attention to the time and could not be exact as to when he first saw Delorio that evening; and Newman, who testified as to the time he saw Bauer alive, did not take any particular note of the time he arrived

at or left his bar. However, under Tornatore's testimony, it may have been as late as 7:45 P.M. when Delorio came to his place and, under Newman's, it may have been as early at 7:00 P.M. when Bauer left. Newman also testified that Bauer arrived approximately at 5:00 P.M. or 5:30 P.M. The proof indicated driving times of only a few minutes between the pertinent places and the Medical Examiner testified to a range during which the death could have occurred consistent with the prosecution's version.

Defendant's release from jail three days before commission of the crime was introduced into evidence to establish that on discharge he had only three cents. When a person is charged with one crime, evidence that he committed other crimes is inadmissible if such evidence is offered solely to establish a criminal disposition, but this rule does not prohibit the admission of competent proof relative to criminal acts by defendant when that proof has substantial probative value to establish some other material fact, such as motive or intent, in the case at hand (*People v. Dales,* 309 N. Y. 97, 101; Richardson, Evidence [9th ed], § 175).

The stripping of defendant's belongings and the taking of his blood sample in the absence of an attorney was not a testimonial communication, as distinguished from a physical communication (*People v. Goldberg,* 19 N Y 2d 460, 465–466). He had been given the *Miranda* warnings at the gas station and, although, upon arrest, he sought to get an attorney who could not come immediately, the prosecution did not seek to admit any statement by defendant after arrest.

In view of the concerted attack upon the prosecution and several witnesses made by defense counsel in summation, the District Attorney's summation was within proper bounds (cf. *People v. Marks,* 6 N Y 2d 67, 77–78). The District Attorney himself stated that the hacksaws had no part in the case. The discourse concerning the prior theft of Bauer's truck, initiated in defendant's summation, was not prejudicial because there was ample evidence that he drove his truck on the day of his death. Defense counsel started comments about perjury and a District Attorney's remark is equally consistent with the position that he was refuting defense implications that Chief Murphy was a liar and that, if he, the District Attorney, knew this, he would be guilty of perpetrating a fraud on the court. Nowhere in summation did the District Attorney state that he saw the license nor did he verify Murphy's testimony. Additionally, the court charged the jury that the credibility of the District Attorney was not in issue, to ignore entirely the District Attorney's reference

to his presence in the various stages of the investigation and to ignore the District Attorney's remarks about subornation of perjury.

The judgment should be affirmed.

REYNOLDS, J. P., STALEY, JR., GREENBLOTT and SWEENEY, JJ., concur.

Judgment affirmed.