[No. 41925.   Department Two.   July 29, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL LEE JORDAN, *Appellant*.

*Norman W. Cohen*, for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney*, and *Charles J. Covello, Deputy*, for respondent.

SHARP, J.—This is an appeal from a conviction under the Uniform Narcotic Drug Act, RCW 69.33, for unlawful possession of the narcotic drug codeine.

The defendant rented a room at a Seattle motel on July 10, 1969. On the following day, at about 9:15 a.m., the maid at the motel checked the defendant's room and saw the defendant lying fully clothed on the bed, apparently sleeping. She returned about 11:30 a.m. and the defendant was in the same position on the bed. When she returned with another person at about 1:30 p.m., the defendant still had not moved. His face appeared grayish and there was no indication of life. After she once again returned about 4:30 p.m. and saw that the defendant was in the same position on the bed, the police were summoned.

Two officers of the Seattle Police Department responded to the call, and found the defendant in the same unconscious condition. Being unable to arouse him and not knowing the nature or cause of his affliction, they immediately summoned an ambulance. The defendant was wearing a T-shirt and they noted needle marks on his arms. Looking for identification, they examined his clothing and a black bag lying on the floor—the only personal possessions in the room. In a pocket of a coat lying on the bed they found a bottle containing about 60 methamphetamine pills in a yellowish fluid. A used hypodermic needle was on the floor between the bed and the door. In the bag was defendant's identification, as well as a number of needles and syringes together with a small container similar to a shell of a cigarette lighter containing approximately 1 dozen codeine pills. Upon arrival of the ambulance, the drivers were instructed that he was to be held in the hospital for the narcotics detail.

The defendant was subsequently charged with, and found guilty by a jury of, the crime of unlawful possession of codeine.

On this appeal, the defendant first contends that the trial court erred in not granting a mistrial on the ground that

handcuffs were placed on the defendant in the presence of at least two jurors.

When the incident occurred during the trial, defendant's counsel advised the court as follows:

> Your Honor, as the court recessed for the noon hour as we were about to leave, the jurors went back to the jury room and came out at which time one of the deputy sheriffs, nonmaliciously, quite by accident, but nonetheless handcuffed and escorted Mr. Jordan away in front of two jurors.

Thereupon, the trial judge promptly, and properly, admonished the jury that the fact that a defendant may be in custody at the time of trial has no bearing whatsoever on the issue of his guilt or innocence since he may or may not make bail depending on his desire and/or ability, and is held in custody if he does not do so. The defendant has failed to make any showing of prejudice resulting from the occurrence. The incident amounted, at most, to a mere misadventure. Under these circumstances, a new trial is unwarranted. *State v. Sawyer*, 60 Wn.2d 83, 371 P.2d 932 (1962).

The defendant next assigns error to the admission into evidence of certain testimony and exhibits relating to the circumstances in which the defendant was discovered. In describing the appearance of the defendant and of the room where he lay, the police officers made mention of the needle marks and identified the various drug paraphernalia found either on the person or in close proximity to him. The defendant urges that the admission of such testimony and exhibits placed the defendant on trial for offenses not charged in the information under the reasoning of *State v. Goebel*, 36 Wn.2d 367, 218 P.2d 300 (1950).

We disagree. The evidence simply discloses the circumstances in which the defendant was initially discovered by the police officers. Since the defendant's theory for acquittal was that he was in lawful possession of the codeine pursuant to a prescription, the officers' description of the defendant and his immediate surroundings when he was

first discovered was relevant to a crucial issue in this case which the jury was charged to decide: namely, the lawfulness or unlawfulness of the defendant's possession of codeine under the circumstances. Even if this evidence could be interpreted as indicating other criminal activity on the part of defendant, we deem it admissible under the rule reenunciated by this court in *State v. Niblack,* 74 Wn.2d 200, 443 P.2d 809 (1968), wherein we stated at page 206:

> There is another class of cases in which evidence of misconduct of the defendant may be received. That class includes cases which involve other criminal acts which are an inseparable part of the whole deed. *State v. Priest,* 132 Wash. 580, 232 Pac. 353 (1925); *State v. Conroy,* 82 Wash. 417, 144 Pac. 538 (1914); *State v. McDowell,* 61 Wash. 398, 112 Pac. 521 (1911); 1 J. Wigmore, Evidence § 218 (3d ed. 1940); 29 Am. Jur. 2d *Evidence* § 321 (1967).

> Such evidence is not open to the objections which justify exclusion of other unrelated crimes. It does not raise the possibility that the jury will condemn the defendant, although he is innocent of the act charged, because it is prejudiced by his former crimes; and the defendant cannot claim surprise, because the misconduct is an integral part of the crime charged.

The defendant next assigns error to the trial court's failure to instruct that intent to commit the crime was an element of the crime charged. He concedes that such is not the established law of this state under *State v. Boggs,* 57 Wn.2d 484, 358 P.2d 124 (1961), and *State v. Mantell,* 71 Wn.2d 768, 430 P.2d 980 (1967). Nevertheless, he asserts that, by introducing the evidence in question, the burden of proving unlawful possession was assumed by the state, and to prove unlawfulness the state must prove criminal intent or guilty knowledge. This assignment is also without merit. As discussed above, the evidence was properly admitted as an integral part of the crime charged and, even though it was relevant to the question of the lawfulness or unlawfulness of defendant's possession, it does not follow that its admission imposes upon the state the additional burden of proving intent or guilty knowledge.

Stating the issue another way, the defense claimed law-

ful possession by virtue of a medical prescription. In support of this defense, the defendant presented testimony of a dentist and a medical records technician that it was possible that at some unknown time in the past prescriptions containing codeine (not in the form of the contraband pills admitted in evidence) might have been prescribed for defendant. This testimony was admitted by the court and argued to the jury under an instruction of the court to the effect that anyone (other than certain persons enumerated as exceptions in the statute) in possession of a narcotic drug which has not been prescribed by an appropriate medical person is unlawfully in possession of such drug. The defendant was entitled to no more. While the evidence in question did tend to cast doubt upon this defense, that fact neither makes it inadmissible nor does it shift the burden of proving unlawful possession to the state.

█ Finally, the defendant contends that there was an unreasonable search and seizure by the police officers which should be suppressed on the ground that it was conducted without a search or arrest warrant, consent, or probable cause, and was unreasonable in scope. We disagree. This court stated the general rule in *State v. Henneke*, 78 Wn.2d 147, 149, 470 P.2d 176 (1970), as follows:

> It is recognized and accepted that the language of the fourth amendment to the United States Constitution does not denounce all searches. It proscribes only those which are unreasonable. *United States v. Rabinowitz*, 339 U.S. 56, 94 L. Ed. 653, 70 S. Ct. 430 (1950). The underlying test is whether a given search is reasonable, and this depends upon the facts, circumstances and exigencies confronting the officers conducting the search. *State v. Palmer*, 73 Wn.2d 462, 438 P.2d 876 (1968); *State v. Gibson*, 76 Wn.2d 814, 459 P.2d 22 (1969).

The exigencies confronting the officers in this case were similar to those confronting the New Jersey police in *State v. Agent*, 101 N.J. Super. 190, 243 A.2d 846 (1968), at page 192:

> In the case here under consideration there was nothing to indicate to the Matawan Police that the defendant had violated the law, but the officers had an unconscious man

on their hands. He was obviously sick or injured. It then became absolutely necessary for the officers to search the defendant to discover his identity, next of kin, and possible information which would indicate that he was suffering some chronic disease. A search of an unconscious person by the police in these circumstances is not only reasonable, but required.

There being no error, the judgment is affirmed.

HAMILTON, C.J., ROSELLINI, HALE, and WRIGHT, JJ., concur.