[No. 1842-2.    Division Two.    November 30, 1976.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES MAURICE ADLER, *Appellant.*

*Neil J. Hoff* and *Hoff & Cross,* for appellant.

*Donald Herron, Prosecuting Attorney,* and *Joseph Mladinov, Special Counsel,* for respondent.

REED, J.—Defendant Charles Maurice Adler appeals from a Pierce County conviction of second-degree assault and impersonation of a police officer. On appeal, defendant Adler's primary contention is that the trial court erred when it denied his motion to suppress his identification made from a photo array, which contained a picture of him that had been taken in connection with a prior criminal charge of which he was subsequently acquitted. Specifically, the defendant argues that the retention and use of his "mugshot" after his acquittal amount to an unconstitutional invasion of his right of privacy, and so tainted the identification process that the in-court identification based thereon constitutes reversible error. We find no merit in this or defendant's other assignments of error, and accordingly we affirm the judgment of the trial court.

On Thursday, October 17, 1974, at approximately 1:30 p.m., Patricia Thompson was visited by a man who identified himself as a police detective investigating neighborhood problems. Ms. Thompson admitted the man into her home, and at his request led him down the stairs into the basement where the "detective" pulled a knife and ordered her to disrobe. When she refused to comply with his demand, the assailant put his knife in his pocket, knocked Ms. Thompson to the floor, and commenced kicking and choking her. Ms. Thompson blacked out, and when she regained consciousness the assailant had fled.

Ms. Thompson described the individual to the police as

dark complexioned with black or brown curly hair, but was unable to identify him from a series of photographs of possible suspects shown her on October 18. On the following Monday the police presented her with a second group of pictures, from which she selected the photograph of the defendant and identified him as her assailant. Approximately a month later in November, Ms. Thompson attended a police lineup and again picked the defendant as the individual who had assaulted her. At trial the prosecution introduced the testimony of five other individuals, all of whom were also visited on October 17 by a man purporting to be a police officer. Of the five, three were able to identify the defendant from his photograph, and all five selected the defendant in the police lineup conducted in November.

Defendant's first assignment of error raises the issue of whether an individual who has been acquitted of a criminal charge has a constitutional right of privacy in police identification data such as his photographs and his fingerprints. At the outset we wish to express our concern with the manner in which this issue was raised. Regardless of whether there is a constitutional right of privacy that extends to police identification data, we have grave doubts as to whether it is appropriate to remedy an invasion of that right under an "exclusionary rule" similar to that associated with the Fourth Amendment prohibition against illegal searches and seizures. It is our opinion that the matter is properly addressed by directly attacking the State's right to retain such data, rather than by attempting to raise the issue collaterally after the retained photograph has been used to identify the individual as the criminal agent in another offense. However, because this objection was neither briefed nor argued before this court, we have addressed ourselves to the merits of defendant's claim.

Washington has recognized that even though the right of privacy is enshrined as a constitutional doctrine, the dimensions of that right are not clearly defined. *Eddy v. Moore*, 5 Wn. App. 334, 344, 487 P.2d 211, 46 A.L.R.3d 889 (1971). *Eddy* traced the evolution of the right of privacy

and noted that other jurisdictions recognize an "equitable right of privacy"[1] but stop short of establishing a constitutional right of privacy of an individual to be free of improper use of his police identification data. *Eddy v. Moore, supra* at 338-39. *See generally* Prosser, *Privacy*, 48 Cal. L. Rev. 383 (1960). The court then went on to hold that the interest an acquitted person has in his fingerprints and photographs is within the constitutional right of privacy:

> We believe the right of an individual, absent a compelling showing of necessity by the government, to the return of his fingerprints and photographs, upon an acquittal, is a fundamental right implicit in the concept of ordered liberty and that it is as well within the penumbras of the specific guarantees of the Bill of Rights
> . . .

*Eddy v. Moore, supra* at 345. This constitutional right was characterized as not being an absolute and complete bar to the retention of fingerprints and photographs by the police, but rather as qualified by the State's right to retain such information upon showing a compelling state interest. *Eddy v. Moore, supra* at 344.

A recent United States Supreme Court decision casts doubt on the correctness of the holding in *Eddy*. In *Paul v. Davis*, 424 U.S. 693, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976), the plaintiff's name and photograph appeared in an "active shoplifters" flyer that was distributed among local merchants. The plaintiff, against whom shoplifting charges had been dismissed, brought an action against the chief of police alleging deprivation of his constitutional rights, including invasion of his right of privacy. In its review of the constitutional right of privacy, the court noted that although there is no specific guaranty of such a right, "zones of privacy" in which the state's power to substantively

---

[1]Prosser has grouped four distinct invasions under the common denomination of right of privacy. These four categories are: (1) the appropriation for the defendant's benefit of the plaintiff's name or likeness; (2) the intrusion into the plaintiff's physical solitude or seclusion; (3) publicity which places the plaintiff in a false light in the public eye; and (4) public disclosure of private facts. W. Prosser, *Law of Torts* § 117 (4th ed. 1971).

regulate conduct is restricted may be created by more specific constitutional guaranties. *Paul v. Davis, supra* at 712. Thus far those matters deemed to be within such "zones of privacy" have been limited to activities relating to marriage, procreation, contraception, family relationships, child rearing, and education, all of which are matters that the Supreme Court has characterized as " 'fundamental' " or " 'implicit in the concept of ordered liberty.' " *Paul v. Davis, supra* at 713. *See, e.g., Cleveland Bd. of Educ. v. LaFleur,* 414 U.S. 632, 39 L. Ed. 2d 52, 94 S. Ct. 791 (1974); *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 37 L. Ed. 2d 446, 93 S. Ct. 2628 (1973); *Roe v. Wade,* 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973); *Eisenstadt v. Baird,* 405 U.S. 438, 31 L. Ed. 2d 349, 92 S. Ct. 1029 (1972); *Loving v. Virginia,* 388 U.S. 1, 18 L. Ed. 2d 1010, 87 S. Ct. 1817 (1967); *Griswold v. Connecticut,* 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965); *Prince v. Massachusetts,* 321 U.S. 158, 88 L. Ed. 645, 64 S. Ct. 438 (1944); *Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535, 86 L. Ed. 1655, 62 S. Ct. 1110 (1942); *Pierce v. Society of Sisters,* 268 U.S. 510, 69 L. Ed. 1070, 45 S. Ct. 571 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 67 L. Ed. 1042, 43 S. Ct. 625 (1923). In *Paul* the court compared and distinguished those interests found to be within the constitutional right of privacy from the interest of the individual whose name and picture appear in an "active shoplifters" flyer, saying at page 713:

> Respondent's claim is far afield from this line of decisions. He claims constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge. His claim is based not upon any challenge to the State's ability to *restrict his freedom of action in a sphere contended to be "private,"* but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner.

(Italics ours.) *Paul* therefore stands for the proposition that the constitutional right of privacy does not include the

interest an individual possesses in his arrest record including his photograph and fingerprints.

█ We are convinced that the *Paul* decision is controlling in the case before the bench, and thus we find that the defendant has no constitutional right of privacy in his photographs and other police identification data. Accordingly it was not improper to admit the identification of the defendant, even though it was derived from a photograph taken in connection with an earlier criminal charge that never resulted in a conviction.

Although defendant did not seek relief under RCW 43.43.730(1), both parties addressed its validity and applicability in their presentation to the court. That statute provides in relevant part:

> When any person, having no prior criminal record, whose fingerprints and/or other identifying data were submitted to and filed at the section, shall be found not guilty of the offense for which the fingerprints and/or other identifying data were sent to the section, or be released without a conviction being obtained, his fingerprints and/or other identifying data and all copies thereof on file at the section shall be destroyed by the section, *provided such person requests said destruction after the finding of not guilty or after the release.*

(Italics ours.) As indicated by the previous discussion, if RCW 43.43.730(1) were applicable, it would not be an unconstitutional invasion of the individual's right of privacy. In any event defendant does not qualify for relief under this statute for two reasons: first, there is no evidence that he made a request, which is an express prerequisite to having his record expunged; and second, the word "section" as used in the statute refers to the Washington State Patrol identification section and therefore would not apply to the Tacoma Police Department. *See* RCW 43.43.700. All of this is not to say that a defendant is without a remedy should his arrest record be misused. In a proper case such a defendant might bring a suit for defamation or invasion of

privacy,[2] and if successful he could be awarded damages or appropriate equitable relief.

Defendant also assigns error to the admission into evidence of photographs of the victim. His theory is that when the defense counsel offered to stipulate that the victim had in fact been assaulted, photographs taken of Ms. Thompson immediately after the assault were no longer probative of any disputed fact and served only to inflame the jury. Generally a stipulation is an agreement between the parties to which there must be mutual assent. *E.g., United States v. Three Winchester 30-30 Caliber Lever Action Carbines,* 504 F.2d 1288 (7th Cir. 1974). Here there is no indication in the record that the prosecution agreed to so stipulate, and therefore the picture of the victim would be admissible as tending to prove that Ms. Thompson was assaulted. *See* Annot., 91 A.L.R. 1478 (1934). So long as the defendant maintained his not guilty plea, the State had the right to prove its case up to the hilt in whatever manner it chose, subject only to the rules of evidence and standards of fair play. *State v. Leland,* 190 Ore. 598, 227 P.2d 785 (1951).

Defendant's argument that the pictures are gruesome and inflammatory also is not well taken. Competent evidence is not inadmissible merely because it is gruesome, and pictures that are accurate representations are admissible if they are probative of some element of the crime. *State v. Griffith,* 52 Wn.2d 721, 328 P.2d 897 (1958). Admissibility of gruesome evidence lies with the discretion of the court, and there being no evidence in the instant case of any abuse of that discretion, we will not disturb the trial court's ruling on the matter. *State v. Griffith, supra* at 727.

Defendant's remaining assignments of error are that the

---

[2]Washington has thus far declined to expressly recognize a tort cause of action based on invasion of privacy. However, the courts have likewise refused to reject the doctrine. *See, e.g., State v. Rabe,* 79 Wn.2d 254, 267, 484 P.2d 917 (1971); *Brink v. Griffith,* 65 Wn.2d 253, 257, 396 P.2d 793 (1964); *Lewis v. Physicians & Dentists Credit Bureau, Inc.,* 27 Wn.2d 267, 177 P.2d 896 (1947).

identification procedures were impermissibly suggestive,[3] that the trial court erred when it denied his motion for a new trial, that the court improperly denied his motion for dismissal, and that he was denied effective counsel at trial. We find no grounds for reversal in any of these contentions, and therefore we affirm the judgment of the trial court.

PETRIE, C.J., and COCHRAN, J. Pro Tem., concur.

Petition for rehearing denied January 5, 1977.

Review denied by Supreme Court May 25, 1977.

---

[3]In *State v. Nettles*, 81 Wn.2d 205, 500 P.2d 752 (1972), Washington adopted the impermissibly suggestive standard enunciated in *Simmons v. United States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968). Here the facts do not imply a substantial likelihood of misidentification, and there is no suggestion that the police said or did anything to indicate that the defendant was a prime suspect. The individuals used in both the photograph identification and the police lineup were not so dissimilar so as to draw attention to the defendant.