[No. 7562–4–I. Division One. September 2, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. JO ELLIOTT THARP, *Appellant.*

*Warner & Resick* and *Thomas J. Resick,* for appellant.

*David S. McEachran, Prosecuting Attorney,* for respondent.

SWANSON, J.—Jo Elliott Tharp appeals from the judgment entered on a jury verdict finding him guilty of second degree felony murder. RCW 9A.32.050(1)(b). He assigns error to several evidentiary rulings by the trial court and to the jury instruction regarding the presumption of innocence. Tharp does not, however, challenge the sufficiency of the evidence to uphold the conviction, nor could he successfully do so, for the verdict is supported by compelling evidence of guilt.

During the evening and early morning hours of March 30 and March 31, 1978, a neighborhood in Bellingham was the scene of extensive criminal activity which culminated in the murder of William Bond. A chronology of the events pertinent to this appeal is as follows:

At about 6:30 p.m. on March 30, Jo Elliott Tharp was given a ride to the area near Yeager's Shopping Center in Bellingham.

Sometime after 5 p.m. that evening, someone broke into the automobile belonging to Judith Larrieux who lived a short distance from the shopping center. Taken was her purse, which contained the certificate of title to her car, a key ring and a bottle of prescription pills.

Sometime after 6:30 p.m. someone broke into the residence of William Tooker located a short distance from the Larrieux residence. The bottle of pills and certificate of title from Larrieux' vehicle were discovered in the Tooker bedroom. The following items were taken from Tooker: a

.380 Unique automatic pistol, a bottle of rum, a knife, a pair of gloves, a commemorative coin from Quartzsite, Arizona, and the key to Tooker's camper.

On that same evening, at 8 p.m., Michael Hoaglund drove his pickup truck to St. Joseph's Hospital in Bellingham to attend a meeting. The hospital parking lot is connected to the back of Tooker's property. When Hoaglund left the meeting, he discovered his truck had been stolen. The truck was subsequently discovered two blocks away from the home of the murder victim, William Bond.

At about 11 p.m. that evening, Chad Bond heard what sounded like his Porsche automobile being started and driven away. After confirming that his car was gone, Chad awakened his parents and called the police. Chad's father, William Bond, immediately got up and left in the family automobile to search for his son's Porsche. A neighbor subsequently discovered the Porsche on a road about a mile from the Bond residence. The Bond family car was parked directly in front of the Porsche, blocking its exit. William Bond's body was found nearby. He had been shot twice, and two .380 cartridges were recovered from the scene. Also found were the knife, leather gloves, bottle of rum, and the camper key taken from the Tooker house.

The next morning, March 31, Carolyn Hanson, of Bellingham, discovered that her 1975 Chevrolet Monte Carlo had been stolen.

On April 4, 1978, Jo Elliott Tharp was arrested driving Carolyn Hanson's Monte Carlo in Deer Lodge, Montana. In his possession was the .380 automatic pistol taken in the Tooker burglary. This gun was established to be the murder weapon. Tharp also had in his possession Judith Larrieux' key ring and Tooker's commemorative dollar.

Tharp was returned to Washington and charged with the felony murder of William Bond. At trial, the State was permitted to present, over defense objections, evidence of the Tooker burglary, the Larrieux vehicle prowl, and the theft of the Hoaglund pickup truck, as well as evidence that Tharp was on furlough from Monroe Reformatory at the

time of the murder where he had been serving a sentence for auto theft. The defense also objected to the admission in evidence of a video tape and photographs of the victim and admission of a motel registration slip allegedly filled in by Tharp on the night of the murder. In addition, an offer of proof regarding a statement exculpating Tharp, made by a onetime suspect in the murder, was rejected by the trial court. These evidentiary rulings, coupled with an instruction regarding the presumption of innocence which is asserted to be erroneous, form the bases for Tharp's assignments of error. We address the issue of the collateral criminal activity first.

### Collateral Criminal Activity

Tharp relies on the fundamental rule frequently expressed by our courts that evidence of other criminal activity is generally inadmissible in a criminal prosecution except for limited purposes, such as showing motive or intent, plan, identity, or absence of accident or mistake. *E.g., State v. Dinges,* 48 Wn.2d 152, 292 P.2d 361 (1956); *State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952); *State v. Terry,* 10 Wn. App. 874, 520 P.2d 1397 (1974).

■ Tharp initially challenges admission of evidence of the collateral crimes on the ground that the State is required to prove—and is here unable to prove—that he, in fact, committed the collateral crimes. He cites no authority, however, which holds that the State must *prove* the existence of the other crimes and Tharp's connection with them beyond a reasonable doubt. Our inquiry convinces us that the nearly universally followed rule is otherwise. That is, assuming evidence of other criminal activity is admissible under one of the exceptions to the general rule of exclusion, the State's burden is to present substantial evidence or clear evidence that the collateral crimes occurred and were committed by the accused. A leading text expresses the rule this way:

[I]t is clear that the other crime, when it is found to be independently relevant and admissible, need not be

established beyond a reasonable doubt, either as to its commission or as to defendant's connection therewith, but for the jury to be entitled to consider it there must of course be substantial evidence of these facts, and some courts have used the formula that it must be "clear and convincing."

(Footnotes omitted.) E. Cleary, *McCormick's Evidence* § 190, at 451–52 (2d ed. 1972).

The rule as expressed by California courts requires that other uncharged offenses "only be proved by a preponderance of substantial evidence", *People v. Durham,* 70 Cal. 2d 171, 187 n.15, 449 P.2d 198, 208–209, 74 Cal. Rptr. 262 (1969), and the evidence must clearly connect the defendant with the other crime. *People v. Edwards,* 159 Cal. App. 2d 208, 323 P.2d 484 (1958). *See also* 1 C. Torcia, *Wharton's Criminal Evidence* § 263 (13th ed. 1972); 29 Am. Jur. 2d *Evidence* § 333 (1967); 22A C.J.S. *Criminal Law* § 690 (1961).

We see no problem in this regard with admission of evidence of the burglary of the Tooker residence and the Larrieux vehicle prowl. Tharp was apprehended in Montana with items taken in both crimes. His connection with those crimes was clearly established, and he admits as much in his brief.

Although no direct evidence tied Tharp to the theft of the Hoaglund pickup, we think commission of the crime and Tharp's connection therewith was established by substantial and clear evidence. Substantial evidence is defined as evidence of a kind and quantity that will persuade an unprejudiced, thinking mind of the existence of the fact to which the evidence is directed. *State v. Hall,* 13 Wn. App. 620, 536 P.2d 680 (1975). Here, evidence was presented that a truck parked in a lot adjacent to the Tooker residence was stolen and abandoned near the Bond residence, from which another vehicle was stolen. The Bond vehicle was subsequently discovered about a mile away, with Bond's body and two empty .380 casings nearby. When apprehended, Tharp had in his possession the .380 taken in the

Tooker burglary, as well as Tooker's commemorative dollar and Larrieux' key ring. Although circumstantial in nature, this is substantial and clear evidence that Tharp took the Hoaglund truck and used it to transport himself to the vicinity of the Bond residence. The State thus met its burden of demonstrating Tharp's connection with the collateral crimes introduced into evidence.

■ We are therefore presented with the issue of whether the evidence complained of was properly admitted under recognized exceptions to the general rule of exclusion. As noted previously, evidence of other criminal activity may be admitted to show motive or intent, the absence of accident or mistake, a common scheme or plan, or identity. This list, however, is not exclusive. *State v. Dinges, supra.* Our courts have previously recognized the so-called "handiwork" exception, *State v. Irving,* 24 Wn. App. 370, 601 P.2d 954 (1979), and an exception for criminal acts which are part of the whole deed, *State v. Jordan,* 79 Wn.2d 480, 487 P.2d 617 (1971). An exception is also recognized for evidence that is relevant and necessary to prove an essential element of the crime charged. *State v. Mack,* 80 Wn.2d 19, 490 P.2d 1303 (1971). *McCormick's Evidence, supra,* lists 10 categories of exceptions. Heading the list is the "res gestae," or "same transaction," exception, wherein evidence of other crimes is admissible "[t]o complete the story of the crime on trial by proving its immediate context of happenings near in time and place." (Footnote omitted.) *McCormick's Evidence* § 190, at 448.

Thus, in *State v. Jordan, supra,* the court found no error in admission of evidence that when the defendant was apprehended for unlawful possession of a narcotic, he was found with needle marks on his arms and drug paraphernalia nearby. Rejected was his argument that such testimony and exhibits placed him on trial for crimes not charged. The court held that evidence of criminal acts which are inseparable parts of the whole deed is admissible.

Similarly, in *State v. Battle,* 16 Wn. App. 66, 553 P.2d 1367 (1976), the defendant was convicted of grand larceny

committed as part of a cash–back scheme in which checks from a bogus company, E & F Roofing, were deposited into savings accounts set up at various banks. The funds were then removed, leaving only small amounts in the savings accounts. The defendant objected to testimony by the manager of a Portland, Oregon, bank that 67 worthless checks totaling nearly $12,000 were written on the account of E & F Roofing. The objection was made on the basis that the defendant was not charged with crimes relating to those 67 checks. The court said,

> Mere similarity between other criminal misconduct and the crimes charged would not in itself have justified the admission of this evidence. . . . But where, as here, a distinctive means was employed in committing the other offenses and the crimes charged, . . . *or where the criminal acts were inseparable from a whole criminal scheme,* . . . evidence of the other criminal misconduct is relevant and admissible.

(Citations omitted. Italics ours.) *State v. Battle, supra* at 69–70.

Under the res gestae, or same transaction, analysis, the evidence of the three collateral crimes was admissible in the instant case. The evidence substantially connected Tharp to all three crimes, as well as the murder of William Bond. The jury was entitled to know the whole story. The defendant may not insulate himself by committing a string of connected offenses and thereafter force the prosecution to present a truncated or fragmentary version of the transaction by arguing that evidence of other crimes is inadmissible because it only tends to show the defendant's bad character. "[A] party cannot, by multiplying his crimes, diminish the volume of competent testimony against him." *State v. King,* 111 Kan. 140, 145, 206 P. 883, 885 (1922).

Determining that the evidence complained of fits into an exception to the rule of exclusion does not end the inquiry. The ultimate test of admissibility is whether the relevance and necessity of the evidence outweighs its prejudice to the defendant. *State v. Goebel,* 36 Wn.2d 367, 218

P.2d 300 (1950). That question, however, is one left to the sound discretion of the trial court. *State v. Goebel, supra* at 379. We do not think that the trial court here abused its discretion with regard to admission of the collateral crimes. An abuse of discretion is "discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Although the prejudice to Tharp is obvious, the relevancy of the evidence of collateral crimes is not entirely engulfed by its prejudice. In addition to being relevant and admissible under the res gestae exception, the evidence of the collateral crimes was relevant and admissible to establish the identity of the perpetrator of the murder. We find no abuse of discretion.

### FURLOUGH STATUS AND PRIOR CONVICTION

Tharp raises the same issues in his contention that the trial court erred in admitting testimony regarding his being on furlough status from Monroe Reformatory for commission of a previous crime. The State argues that that evidence was relevant to show Tharp's motive for killing Bond; that is, that at the time Bond confronted him, Tharp knew his status on furlough would be an aggravating factor if he were apprehended and convicted for stealing the Bond Porsche.

██ Although prejudicial to Tharp, we agree that the evidence of his prior conviction and furlough status was relevant and admissible to shed light on his motive for committing murder. We are unaware of a similar situation having been the subject of a prior appellate decision in this state, but we believe analogous cases from other jurisdictions illustrate the correctness of our conclusion.

In *People v. Delorio,* 33 App. Div. 2d 350, 354, 308 N.Y.S.2d 131 (1970), evidence was admitted showing that the defendant had been released from jail 3 days prior to commission of the robbery for which he was on trial and had at that time 3 cents in his pocket. The court stated,

When a person is charged with one crime, evidence that he committed other crimes is inadmissible if such evidence is offered solely to establish a criminal disposition, but this rule does not prohibit the admission of competent proof relative to criminal acts by defendant when that proof has substantial probative value to establish some other material fact, *such as motive or intent,* in the case at hand . . .

(Italics ours.) *People v. Delorio, supra* at 135.

Similarly, in a prosecution for murder of two FBI agents, evidence that the defendant had recently escaped from prison and had committed a bank robbery shortly before the killings was admitted to prove intent, despite its highly prejudicial nature. *United States v. Bryant,* 471 F.2d 1040 (D.C. Cir. 1972).

In *People v. Powell,* 40 Cal. App. 3d 107, 115 Cal. Rptr. 109 (1974), the crime charged was murder of a police officer who had stopped the defendant's vehicle. The trial court admitted evidence that the defendant had previously been convicted of a felony, incarcerated in the state penitentiary, and had been released on parole. The court stated:

The admission of other crimes is always a sensitive subject. Such unattractive history hardly enhances a defendant's position before the trier of fact. However, where the evidence is material and relevant it is not automatically excluded. The circumstance of Powell's parole status could reasonably tend to prove that he killed Campbell to avoid revocation of his parole and return to prison. Balancing values as to whether or not such evidence should be admitted is left to the discretion of the trial judge. We cannot say that the trial judge did not strike this balance with great care comparing the probative value to the prejudicial effect.

*People v. Powell, supra* at 155.

■ Tharp argues, however, that motive and intent are essentially indistinguishable, and that because intent is not an element of felony murder, evidence of intent *and* motive was irrelevant. We do not agree with this contention. Although it is true that proof of intent to kill is not an element of felony murder, we must point out that motive and

intent are not synonymous; motive is the inducing cause, while intent is the mental state with which the criminal act is committed. The prosecution is not required to establish motive for the crime, but evidence of motive is relevant and admissible. 1 C. Torcia, *Wharton's Criminal Evidence* § 170 (13th ed. 1972). We therefore conclude that admission of Tharp's furlough status and prior conviction was proper to establish his motive for killing William Bond.

 Tharp next argues that the trial court erred in failing to give an instruction informing the jury that evidence of the collateral crimes was admitted for the limited purpose of showing motive or intent, identity, common scheme or plan, or absence of accident or mistake. This contention is answered by pointing out that Tharp never requested such a limiting instruction. Therefore, no error was committed. *State v. Hess,* 86 Wn.2d 51, 541 P.2d 1222 (1975).

### PHOTOGRAPHS OF VICTIM

 Tharp argues that the court erred in admitting five photographs and a video tape of the victim, contending that in addition to being gruesome, the evidence was unnecessary as he was willing to stipulate that the victim died of gunshot wounds. This court rejected a similar contention in *State v. Adler,* 16 Wn. App. 459, 558 P.2d 817 (1976), on the ground that a stipulation requires the assent of the State, as well as the defendant, and that so long as the defendant maintained his not guilty plea, the State could "prove its case up to the hilt in whatever manner it chose, subject only to the rules of evidence and standards of fair play." *State v. Adler, supra* at 465. Here the State did not agree to stipulate regarding the cause of death.

 In addition, admissibility of gruesome photographs is within the discretion of the trial court. *State v. Griffith,* 52 Wn.2d 721, 328 P.2d 897 (1958). Our review of the record reveals that the video tape showed the body as it was discovered at the crime scene, and the photos were an aid to the pathologist's testimony and showed how the vic-

tim died. We are unable to find anything in the record suggesting that the photographs and video tape were admitted solely to inflame the jury.

We decline to accept Tharp's invitation to adopt a rule excluding photographs whenever the defendant manifests a willingness to "stipulate" to a fact at issue in the trial. Competent evidence is not inadmissible solely because it is gruesome. *State v. Griffith, supra.* Nor can a brutal crime "be explained to a jury in a lily–white manner to save the members of the jury the discomfiture of hearing and seeing the results of such criminal activity." *State v. Adams,* 76 Wn.2d 650, 656, 458 P.2d 558 (1969). Moreover, our own review of the photos discloses that they are not particularly gruesome. There was no abuse of discretion.

### Refused Exculpating Testimony

Tharp contends that he should have been permitted to put on evidence that one Wade Catlin, who had been a suspect in the crime, had made the statement during a psychiatric examination that "Jo didn't do it but Jo knows who did it and Jo's too dumb to open his mouth so he's going to take the rap." This statement was related by the psychiatrist to the court in chambers but was ruled inadmissible on the ground that it violated the hearsay rule. Tharp argues that the statement was admissible as a declaration against penal interest under Washington Rules of Evidence 804(b)(3). Aside from the fact that the Rules of Evidence were not in effect at the time of Tharp's trial, we fail to see how Catlin's statement tended to expose him to criminal liability, and we find no error in the trial court's ruling.

### Admission of Motel Registration

The State presented, over defense objection, a motel registration slip allegedly filled out by Tharp when he checked into a Seattle motel on the night of the murder. The slip showed the name of the motel guest to be "Jay Elliot T." and indicated that he was driving a vehicle matching the

description and license plate of Carolyn Hanson's stolen Chevrolet Monte Carlo. When Tharp was arrested in Montana, he was in possession of the stolen car.

In a separate prosecution for theft of the Hanson vehicle and an adjudication that Tharp was a habitual criminal, this court held that the motel registration was hearsay and concluded that its admission into evidence was reversible error because it went to the very heart of the issue of whether Tharp possessed the automobile shortly after it was stolen. *State v. Tharp,* 26 Wn. App. 184, 612 P.2d 11 (1980). The instant case, however, was a prosecution for felony murder committed in the course of, furtherance of, and immediate flight from, the theft of Chad Bond's Porsche. The prosecution obviously believed the registration slip was helpful to the State's case in order to tell the whole story of the murder, but its significance here is slight when compared to the prosecution for taking the Hanson vehicle without permission. In this case, evidence that Tharp checked into a Seattle motel was relevant principally to show his flight from the scene of the murder. The fact of Tharp's flight, however, was independently established by the circumstances of his apprehension in Montana. Although the motel registration was one strand in a web of circumstantial evidence pointing to Tharp as the killer, it was far from being a key element of the State's case.

■ On the subject of harmless error, our Supreme Court has made these observations:

> An accused cannot avail himself of error as a ground for reversal where the error has not been prejudicial to him. *State v. White,* 72 Wn.2d 524, 433 P.2d 682 (1967). Error cannot be regarded as harmful so as to require reversal unless, within reasonable probabilities, had the error not occurred, the result might have been materially more favorable to the one complaining of it. *United States v. Walton,* 411 F.2d 283 (9th Cir. 1969). We do not believe the average juror would have found the prosecutor's case significantly less persuasive had the jury not been instructed on the statutory presumption of the

defendant's specific intent to kill. The error was harmless. *Schneble v. Florida,* 405 U.S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056 (1972).

*State v. Rogers,* 83 Wn.2d 553, 557, 520 P.2d 159 (1974).

Applying those principles here, we do not believe that the jury would have found the State's case significantly less persuasive had the motel registration not been introduced into evidence; and it cannot be said that, within reasonable probabilities, the result of the trial would have been materially more favorable to Tharp had his objection been sustained. We therefore conclude that the error was harmless.

## JURY INSTRUCTION

Tharp assigns error to the giving of instruction No. 17 relating to the presumption of innocence:

A defendant is presumed innocent. This presumption continues throughout the entire trial *unless you find it has been overcome* by the evidence beyond a reasonable doubt.

(Italics ours.) Instruction No. 17, in part.

Tharp's argument is that the instruction states incorrectly that the presumption of innocence may be overcome at some point during the trial. To bolster his argument, he points out that in the judge's opening remarks to the jury panel, prior to voir dire by counsel, an instruction nearly identical to instruction No. 17 was given. Thus, Tharp argues, prior to hearing any evidence, the jury was told that the presumption of innocence could be overcome during the trial, thus effectively shifting the burden of proof to the defendant.

 There is no dispute regarding the applicable principles of law. The prosecution must prove every element of the crime charged beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). An instruction which operates to shift to the defendant the burden of proving a critical fact at issue is constitutionally impermissible. *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975). Here, however, there was no shifting of the burden of proof. It is well established that "a

single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146–47, 38 L. Ed. 2d 368, 94 S. Ct. 396 (1973); *see also State v. Foster,* 91 Wn.2d 466, 589 P.2d 789 (1979); *State v. Dana,* 73 Wn.2d 533, 439 P.2d 403 (1968); *State v. Birdwell,* 6 Wn. App. 284, 492 P.2d 249 (1972).

Instruction No. 17 in its entirety[1] made clear that the defendant's plea of not guilty put at issue every element of the crime charged and that the burden of proof rested on the State. In addition, when the judge initially addressed the jury panel prior to counsel's voir dire, he stated, "This presumption continues throughout the entire trial unless you find *during the deliberations* that it has been overcome by the evidence beyond a reasonable doubt." Moreover, instruction No. 3 stated in part,

> In determining whether any proposition has been proved you should consider *all* of the evidence introduced by *all* parties bearing on the question.

(Italics ours.) Instruction No. 3 also told the jurors to consider the instructions as a whole. Instruction No. 5 regarding the elements of the crime stated,

> [I]f, after weighing *all of the evidence,* you have a reasonable doubt as to anyone [*sic*] of these elements, then it will be your duty to return a verdict of not guilty.

(Italics ours.) Instruction No. 5 also made clear that each element of the crime charged had to be proved beyond a

---

[1] "The defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The plaintiff has the burden of proving each element of the crime beyond a reasonable doubt.

"A defendant is presumed innocent. This presumption continues throughout the entire trial unless you find it has been overcome by the evidence beyond a reasonable doubt.

"A reasonable doubt is one for which a reason can be given and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly and carefully considering all of the evidence or lack of evidence. If, after such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt." Instruction No. 17.

reasonable doubt. Instruction No. 11 likewise made reference to the reasonable doubt standard. Instruction No. 15 contains this statement,

[I]t is the duty of the jury to determine its verdict herein upon a consideration of *all* the evidence before them.

(Italics ours.)

Reading the instructions as a whole, it is clear that the jury was instructed to consider all of the evidence and make no determinations until all the evidence was received. We fail to see how the jury could have concluded that the presumption of innocence could be overcome prior to entering upon its deliberations. Moreover, the State's burden of proof was emphasized during the course of the instruction. *Cf. Cupp v. Naughten, supra.* Under these circumstances, there was no shifting of the burden of proof.[2]

Our review of the record convinces us that Tharp had a fair trial, if not a perfect one. For the foregoing reasons, the judgment of the Superior Court is affirmed.

CALLOW, C.J., and ANDERSEN, J., concur.

Reconsideration denied October 2, 1980.

Review granted by Supreme Court January 30, 1981.

---

[2]We are aware of the Wisconsin authority to the contrary, *Roen v. State,* 182 Wis. 515, 196 N.W. 825 (1924), cited by Tharp, but we do not find it persuasive.