IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34769-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY TYLER MARTIN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Jeffrey Martin appeals his convictions for first degree robbery and first degree burglary, arguing that his trial counsel provided ineffective assistance by failing to argue that the excited utterance exception authorized admission of a statement made by his codefendant. Counsel did not err, so Mr. Martin fails to establish that his counsel was ineffective.

## FACTS

This case had its genesis in a confrontation in a casino hotel room in Airway Heights. Earlier in the evening, victim Gary Eskridge had exchanged telephone numbers with Patricia Walpole. The two had met at the casino; Eskridge was staying at the casino's hotel. Ms. Walpole was accompanied by her children, Dustin Perrin and Angela Blue-Darling. Martin was a friend of the group. The Walpole group later left the casino.

They had not ventured far when Eskridge sent a series of texts to Ms. Walpole that apparently incensed her children. They decided to return to the hotel in the wee hours of the morning to confront Eskridge. Martin agreed to accompany them.

Eskridge received a text message from Walpole's phone at 5:20 a.m. asking if he was still up. He responded "yes" and sent his room number. The trio reached the room a few minutes later and knocked on the door. The two men flattened themselves on either side of the door; Eskridge could only see the young woman through the peephole. A hotel video captured the scene in the hallway.

Eskridge opened the door and briefly spoke with Blue-Darling before the two men rushed into the room. Perrin allegedly asked Eskridge, "what were you going to do to my momma?" The two men pushed Eskridge against a wall. Martin held him there while Perrin struck him. Perrin demanded money and collected items on the nightstand belonging to Eskridge while Martin continued to hold the victim against the wall. Perrin disconnected the room's telephone.

Eskridge called out for help and Martin threw him to the ground between the bed and the wall. The two men left the room and took Eskridge's watch, cell phone, keys, and pants. Eskridge suffered a broken ankle and a bloody nose. He spent three days in the hospital.

Mr. Martin was charged with first degree robbery and first degree burglary. His case proceeded to jury trial. He took the stand in his own defense and testified to

returning to the casino at the request of Mr. Perrin. When reciting statements made as the trio entered into Eskridge's hotel room, the trial court sustained the prosecutor's objection. Defense counsel insisted that it was "res gestae," but the court instructed Mr. Martin not to repeat anything that another person said. Report of Proceedings (RP) at 108. Mr. Martin told the jurors that he did not have permission to enter the room, but followed the others in. A fight soon ensued between Mr. Perrin, whom he described as mad and shouting, and Eskridge. Martin was not involved in the fight. One time Perrin shoved Eskridge into Martin, but the defendant simply pushed Eskridge back at Perrin. Perrin was the person who took the victim's property.

In closing argument, defense counsel contended that Perrin was the bad actor and that his client "was a mere dupe" who was unaware of what was about to transpire. RP at 156. He pointed to the fact that his client did not take any property as evidence of his lack of intent to commit a crime. Nonetheless, the jury convicted Mr. Martin as charged on both counts.

The defense moved for a new trial and made an offer of proof concerning what Mr. Martin would have testified if permitted. In very brief testimony, Mr. Martin answered questions from his counsel and identified "what were you going to do to my momma" as the sole statement he would have offered. The trial court concluded that the statement was not admissible and denied the new trial motion.

3

Mr. Martin was sentenced within the standard range and promptly appealed to this court. A panel considered the case without argument.

## ANALYSIS

This appeal raises a single issue—was trial counsel ineffective for failing to argue the excited utterance exception to the hearsay rule?

The standards of review governing a claim of ineffective assistance of counsel are well understood. The Sixth Amendment guarantee of counsel requires more than the mere presence of an attorney; counsel must perform to the standards of the profession. Failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. *State v. McFarland*, 127 Wn.2d 322, 334-335, 899 P.2d 1251 (1995). In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on a claim of ineffective assistance, the defendant must show both that his counsel erred and that the error was so significant, in light of the entire trial record, that it deprived him of a fair trial. *Id.* at 690-692.

Mr. Martin is unable to satisfy either prong of the *Strickland* test. His counsel did attempt to enter the testimony into evidence. The evidence was of such minor relevance, however, that any error was harmless. This argument requires us to consider the rules governing evidentiary issues on appeal.

4

We review a trial court's evidentiary rulings for abuse of discretion. *State v. Guloy*, 104 Wn.2d 412, 429-430, 705 P.2d 1182 (1985). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). An erroneous evidentiary ruling is not prejudicial "unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). The failure to raise an evidentiary objection to the trial court waives the objection. *Guloy*, 104 Wn.2d at 422; *State v. Boast*, 87 Wn.2d 447, 451-452, 553 P.2d 1322 (1976). As explained in *Guloy*:

> A party may only assign error in the appellate court on the specific ground
> of the evidentiary objection made at trial. Since the specific objection
> made at trial is not the basis the defendants are arguing before this court,
> they have lost their opportunity for review.

104 Wn.2d at 422 (citation omitted).

Hearsay is a statement made by a declarant, other than while testifying, that is "offered in evidence to prove the truth of the matter asserted." ER 801(c). That definition presents the first problem with this appeal. The question, "what were you going to do to my momma?" does not constitute hearsay. It is not a statement of fact, but is an inquiry of another. It also was not offered to prove the truth of the matter asserted since there is no assertion of fact, truthful or otherwise, contained therein.

If the trial court determined that the statement was hearsay, it erred in so doing.[1] The appellant, however, does not challenge either the rulings made during trial or the ruling on the motion for a new trial. Instead, he argues that his trial counsel erred. That is not the case. An attorney is not a guarantor of the judge's rulings. Appellant has not satisfied the first prong of the *Strickland* standard.

Nonetheless, the appellant argues that his counsel erred by not arguing the excited utterance exception to the hearsay rule. Even if the statement had been hearsay, the excited utterance exception was not necessarily the method to enter it into evidence. An excited utterance is admissible because it is "believed to be 'a spontaneous and sincere response to the actual sensations and perceptions already produced by [an] external shock.'" *State v. Chapin*, 118 Wn.2d 681, 686, 826 P.2d 194 (1992) (quoting 6 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1747, at 195 (James H. Chadbourn rev. ed. 1976)). An excited utterance has three requirements: (1) a startling event or condition occurred, (2) the declarant made a statement that relates to the startling event, and (3) the declarant made the statement while still under the stress of excitement caused by the event. ER 803(a)(2); *State v. Young*, 160 Wn.2d 799, 806, 161 P.3d 967 (2007). Even assuming that the victim's texts constituted a startling event, Perrin's

---

[1] The specific statement was not offered during trial, in part because no opportunity was permitted, so the trial court was not in a position to consider whether this question could be hearsay.

6

alleged statement failed the second and third prongs of this test. The inquiry is not about the "startling event," but is an effort to obtain information about the future. It also does not appear to have been made while under the influence of the earlier texts. Perrin and his sister planned their response and traveled back to the hotel to confront the victim, making efforts at concealment. While the texts may have motivated their action, it cannot be said that Perrin and his accomplices were "under the stress of excitement" caused by the texts. They premediated their return to the casino and their actions upon arriving there. The statement in the hotel room was not an excited utterance.

If a theory of admissibility had been necessary, the one offered by trial counsel was the correct theory. The concept of "*res gestae*" has several distinct meanings in the law, some of which are related to ER 404(b). *See, e.g.*, *State v. Tharp*, 27 Wn. App. 198, 204, 616 P.2d 693 (1980), *aff'd*, 96 Wn.2d 591, 637 P.2d 961 (1981). However, it also has a more general meaning that encompasses the idea of "completing the picture." *Id.* Defense counsel likely was referring to the term in this sense when explaining the relevancy of the evidence.

However, the term also refers to a hearsay exception. *See State v. Pugh*, 167 Wn.2d 825, 837-845, 225 P.3d 892 (2009). As noted in *Pugh*, the res gestae hearsay exception is the source of several modern hearsay exceptions, including the excited utterance exception. *Id.* at 839-840. Like an excited utterance, the essence of the exception is the spontaneous nature of the utterance. *Id.* If counsel was referring to this

7

exception at trial, he properly referred the trial court to a correct theory of admissibility for the hearsay. *Id.* at 839-845.

For all of the noted reasons, counsel did not perform defectively by failing to urge the excited utterance exception on the trial judge. Moreover, the defense was not harmed by the omission of the evidence. Perrin's state of mind was of very little importance to determining the meaning of Martin's active participation in the events at the hotel. In particular, given that Mr. Martin denied assaulting or robbing the victim, the state of mind of the defendants was not of particular import. The question was not whether Mr. Eskridge had been attacked and robbed; the question was whether Mr. Perrin committed the crime alone or with the active assistance of Mr. Martin. The excluded statement simply did not impact the jury verdict one way or the other.

Mr. Martin has not demonstrated that his counsel rendered ineffective assistance. The convictions are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, C.J.

Pennell, J.

8