[No. 26097-9-I.   Division One.   December 20, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. PATRICK J. SCHAFFER, *Appellant*.

*Andrew Zinner* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ellen O'Neil-Stephens, Deputy,* for respondent.

SCHOLFIELD, J. — Patrick J. Schaffer appeals his adjudication of guilt in juvenile court for the offense of malicious mischief in the third degree. We affirm.

## FACTS

On July 7, 1989, Patrick J. Schaffer was charged by information with knowingly and maliciously causing physical damage in excess of $50 to tires belonging to Jeff Syverson, Janice Krogstadt, and Lisa Galster. A fact-finding hearing was held on March 7-8, 1990.

At that hearing, Janice Krogstadt, who resided at 11016 17th Avenue SW., testified that on the night[1] of December 4, 1988, she heard a "loud and boisterous" group of individuals traveling up and down her street. When Krogstadt went out of her front door to see what was happening, she saw two boys standing near her mailbox. One of the boys looked at her and then knocked her mailbox from its stand. Krogstadt could not identify either of the boys, except to describe the clothing of the boy who damaged her mailbox. Krogstadt also testified that the next morning when she went out to her 1986 Ranger pickup, she discovered the left front tire had been slashed. Her husband had brought the vehicle home shortly after midnight.

Richard Matthews, who resided at 11025 17th Avenue SW., testified that he saw Pat (Schaffer), Tony (DeArment), and Heidi (Hughes), and a couple of other girls walking down the street on the night of December 4, 1988. Matthews testified that he saw Pat and Tony knocking off mailboxes with a baseball bat. According to Matthews, the next morning he observed that mailboxes belonging to Pat and

---

[1] Krogstadt did not testify as to the specific hour.

Mary Martin, Fred Chapman, and Mr. and Mrs. Krogstadt had all been knocked down.

Jeffrey Syverson, who resided at 110th and Ambaum Boulevard SW., testified that the next morning following December 4, 1988, he discovered that all four tires on his Chevy 4 by 4 truck had been stabbed, apparently with some instrument resembling an ice pick. However, Syverson testified that he heard no disturbance that evening.

Following Syverson's testimony, the State moved to amend the information to read as follows:

That the respondent Patrick J. Schaffer, in King County, Washington, on or about 4 December 1988, did knowingly and maliciously cause physical damage to tires and mailboxes, the property of Jeff Syverson, Janice Krogstadt, and Lisa Galster[.]

The trial court denied the State's motion on the basis of prejudice to Schaffer. The trial court was persuaded by defense counsel's contention that she chose not to object on relevancy grounds to the admission of the testimony regarding the mailbox vandalism, given that the defense theory of the case would be that although the State showed the mailbox vandalism, it had failed to show beyond a reasonable doubt that Schaffer was anywhere near the Krogstadt vehicle or the Syverson vehicle.

Subsequently, the State called Heidi Hughes as a witness. Hughes was given immunity from prosecution for any part she might have played in the incident. Hughes testified that on December 4, 1988, Schaffer and a boy named Richard came to her house, and the three of them and a girl named Becky walked to a nearby bowling alley. On the way to the bowling alley, Richard and Pat (Schaffer) knocked down two or three mailboxes by kicking them.

Hughes testified further that around 9 p.m., a group of five or six people were returning from the bowling alley, and Schaffer, Richard and Tony were slashing tires and knocking down mailboxes. Specifically, with regard to tire slashing, Hughes testified that as the group passed a light-colored truck, she heard a hissing sound similar to the sound of air coming from a tire. Hughes indicated that both

Schaffer and an individual named Tony were walking ahead of her at the time.

At the close of Hughes' testimony, the State renewed its motion to amend the information, arguing that a nexus had been shown between the tire-slashing activity and the mailbox vandalism. The trial court granted the motion to amend, stating as follows:

> I am going to conclude that at least for purposes of the Motion to Amend, as well as for evidentiary purposes, Ms. Hughes' testimony would establish a basis for admitting all of the evidence with respect to this group of individuals as it relates to both the mailboxes and tires on that evening. And that any Motion in Limini [*sic*] that would have been made would have been denied in that with respect to cross examination, given the testimony of the State's witnesses in this case, there has been no prejudice in terms of the strategy with regard to cross examination suffered by the Respondent.

The trial court determined that Schaffer was guilty of malicious mischief in the third degree, having found beyond a reasonable doubt that Schaffer knowingly and maliciously participated in the entire set of activities of the group, including causing physical damage to personal property belonging to the Krogstadts. Schaffer, a middle offender, was sentenced to 3 months of community supervision, accompanied by 8 hours of community service. This appeal timely followed.

### Motion To Amend

Schaffer's assignments of error all relate to the granting of the State's motion, made during trial, to amend the information. CrR 2.1(e) provides for amendment of an information as follows:

> **Amendment.** The court may permit any information or bill of particulars to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced.

However, article 1, section 22 of the Washington State Constitution provides in pertinent part that:

> In criminal prosecutions the accused shall have the right to . . . demand the nature and cause of the accusation against him [and] to have a copy thereof . . ..

In *State v. Gosser*, 33 Wn. App. 428, 656 P.2d 514 (1982), the trial court allowed the State to amend an assault charge from a "knowing assault of another with intent to commit a felony of first degree escape, RCW 9A.36.020(1)(d)" to a "knowing assault of another with a weapon or other instrument or thing likely to produce bodily harm[,] RCW 9A.36.020(1)(c)." *Gosser*, at 434.

In affirming the trial court, the *Gosser* court stated that where the principal element in the new charge is inherent in the previous charge, and there is no showing of other prejudice, it is not an abuse of discretion to allow amendment on the day of trial. *Gosser*, at 435.

In *State v. Pelkey*, 109 Wn.2d 484, 745 P.2d 854 (1987), the charge was bribery, and the information was amended after presentation of the State's case to charge trading in special influence. After the return of a guilty verdict, the trial court dismissed the charge, based on a finding that the criminal statute in question was unconstitutional. The State appealed. The Washington Supreme Court affirmed the trial court's dismissal of the charge, but on other grounds, holding that the State had violated Const. art. 1, § 22 (amend. 10) by amending the information after it had presented its case in chief. *Pelkey*, at 485.

In its analysis, the *Pelkey* court noted that CrR 2.1(e) must operate within the confines of Const. art. 1, § 22 (amend. 10). Further, the *Pelkey* court noted that during the pretrial investigatory period, amendments to the information are liberally allowed as the State discovers new information, and that a defendant may seek a continuance to adequately meet the new charge. *Pelkey*, at 490.

However, according to the *Pelkey* court, once a trial has begun, there is a great risk of prejudice to the defendant, because pretrial motions, voir dire, opening argument, direct questioning, and cross examination of witnesses have been based on the charge contained in the information. In addition, where a jury has already been empaneled, the defendant may be prejudiced if the jurors are confused by the variance from the original information. *Pelkey*, at 490.

The *Pelkey* court noted that midtrial amendment of the information has been permitted to merely set forth a different manner of committing a particular crime or to charge a lower degree of the crime, but that anything else prejudices the defendant's substantial constitutional right to demand the nature of the charge. *Pelkey*, at 491.

In *State v. Brown*, 55 Wn. App. 738, 780 P.2d 880 (1989), *review denied*, 114 Wn.2d 1014 (1990), Brown was initially charged with five counts of statutory rape in the first degree, alleging incidents occurring as much as 3 years earlier. Later amendments, including an amendment following jury selection but before the trial began, altered the information to charge acts constituting either statutory rape or indecent liberties during 1984 and 1985.[2] *Brown*, at 741.

In affirming the trial court's decision to allow the amendment of the information on the first day of trial, the *Brown* court indicated that Brown showed no prejudice resulting from the amendment. The amendment eliminated some charges and reduced others. The reduced charges concerned the same evidence, and the principal element of the new charges of indecent liberties, that is, sexual contact, was inherent in the previous charges of statutory rape. *Brown*, at 743-44.

Applying this analysis to the case before us, we note that the malicious mischief in the third degree statute reads as follows:

> (1) A person is guilty of malicious mischief in the third degree if he knowingly and maliciously causes physical damage to the property of another, under circumstances not amounting to malicious mischief in the first or second degree.
> (2) Malicious mischief in the third degree is a gross misdemeanor if the damage to the property is in an amount exceeding fifty dollars; otherwise, it is a misdemeanor.

RCW 9A.48.090. The original information alleged that Schaffer had caused physical damage in excess of $50 to tires. The amended information alleged that Schaffer had caused physical damage to tires and to mailboxes. Thus, the amendment deleted the monetary element that made the

---

[2]Trial took place in 1986.

crime charged a gross misdemeanor, but, in effect, added an alternative way to commit the crime, *i.e.*, by damaging mailboxes.

We believe that the factual situation here is analogous to the circumstances in *Gosser*. The State sought to, in effect, allege a different means for committing the same crime of malicious mischief in the third degree, the change in penalty notwithstanding. As in *Gosser*, the principal element in the new charge is inherent in the old charge. In both instances, the principal element is causing physical damage to another's property. Therefore, in the absence of other prejudice, the amendment did not affect Schaffer's right to demand the nature of the accusation against him.

Schaffer argues here that his trial counsel established prejudice by arguing that had it been known that Schaffer would be charged with vandalizing mailboxes, he might not have gone to trial at all, that different witnesses would have been called, and that trial counsel would have done more investigating about that aspect of the case. These arguments are without merit.

If Schaffer would have chosen not to go to trial, his only other option would have been to plead guilty or to stipulate to the record. The result would have been an adjudication of guilt, placing him in essentially the same position he is in now. With regard to additional witnesses or more investigation, any such prejudice could be cured by asking for a continuance. No such request was forthcoming. Where the defendant fails to ask for a continuance, there is presumed to be a lack of surprise and prejudice. *State v. Brown*, 74 Wn.2d 799, 447 P.2d 82 (1968).

However, the most telling argument made by defense counsel below was that Schaffer was prejudiced by counsel's failure to bring a motion to exclude testimony regarding the mailbox vandalism on relevancy grounds. Defense counsel argued that she chose not to do so, in part to allow her to argue to the court that while the State had shown Schaffer's involvement in the mailbox vandalism, it had not shown beyond a reasonable doubt that Schaffer had vandalized the

tires. However, if a motion to exclude the mailbox vandalism would have been denied, then no prejudice resulted from defense counsel's failure to make such a motion.

■ Evidence of other crimes, wrongs or acts is not admissible:

> to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ER 404(b). Prior Washington law is in accord. Prior bad acts will only be admissible if they are logically relevant to a material issue before the jury. *State v. Goebel,* 40 Wn.2d 18, 21, 240 P.2d 251 (1952). Even if relevant, however, such evidence is inadmissible if the resulting prejudice considerably outweighs the relevancy. *State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950).

The trial court must first consider the relevance of prior bad acts by deciding whether the evidence makes the existence of any fact that is of consequence to the determination of the action more or less probable. *See* ER 402.[3] If the evidence is relevant, then probative value must be balanced against prejudicial effect. *See* ER 403.[4]

In *State v. Tharp,* 27 Wn. App. 198, 616 P.2d 693 (1980), *aff'd,* 96 Wn.2d 591, 637 P.2d 961 (1981), the defendant was charged with second degree felony murder. The trial court admitted evidence of a series of criminal events which culminated in the murder. The court held that the evidence of the three collateral crimes was admissible under the res

---

[3]ER 402 reads as follows:

"All relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute, by these rules, or by other rules or regulations applicable in the courts of this state. Evidence which is not relevant is not admissible."

[4]ER 403 reads as follows:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

gestae or same transaction analysis because its purpose was
" '[t]o complete the story of the crime on trial by proving its
immediate context of happenings near in time and place.' "
*Tharp*, at 204 (quoting E. Cleary, *McCormick on Evidence* §
190, at 448 (2d ed. 1972)).

According to Tegland, res gestae evidence is admissible in
Washington:

> if it is so connected in time, place, circumstances, or means
> employed that proof of such other misconduct is necessary for
> a complete description of the crime charged, or constitutes
> proof of the history of the crime charged.

5 K. Tegland, Wash. Prac., *Evidence* § 115, at 398 (3d ed.
1989). In *State v. Bockman*, 37 Wn. App. 474, 682 P.2d 925,
*review denied*, 102 Wn.2d 1002 (1984), two brothers were
initially charged and convicted of burglary and assault. Sub-
sequently, they were charged with first degree murder,
occurring on the same evening as the burglary. *Bockman*, at
477-78. At the murder trial, the brothers sought to exclude
evidence of the burglary and the assaults.

The *Bockman* court held that evidence of the other crimes
was admissible because it substantially connected the Bock-
man brothers to the murder. The *Bockman* court went on to
quote that portion of the *Tharp* opinion stating that a jury
was entitled to know the whole story. *Bockman*, at 490-91.

However, in *State v. Mutchler*, 53 Wn. App. 898, 771 P.2d
1168, *review denied*, 113 Wn.2d 1002 (1989), the defendant
was charged with assault in the first degree with intent to
commit rape or indecent liberties, for attacking a woman
who was walking in a park. The State introduced evidence
that another woman had encountered Mutchler a few days
earlier, that she had felt uncomfortable and nervous as
Mutchler passed her, and that he had a plastic baseball bat
down the back of his pants. In addition, the second woman
again encountered Mutchler on the day he allegedly
assaulted the first woman, and the second woman testified
she noticed a knife hanging from Mutchler's belt, and when
she stopped at a bench, Mutchler sat on the bench next to
her and stared at her crotch. *Mutchler*, at 899.

The *Mutchler* court held that although the second woman's testimony was admissible on the issue of intent, it was not admissible on the basis of res gestae. The story of the attack on the first woman was complete without the testimony of the second woman. Therefore, despite the close timing of the events, res gestae did not apply. *Mutchler*, at 902.

The facts before us are more closely analogous to *Tharp* and *Bockman* than to *Mutchler*. The testimony regarding the mailbox vandalism set the stage to show that the individuals were involved in a wave of activity, occurring within a short span of time, that apparently began with knocking off mailboxes and escalated to slashing tires on vehicles. The evidence of the mailbox vandalism was admissible, as the trial court did find.

Having determined that the evidence of the mailbox vandalism would have been admissible under the original charge in the information, Schaffer's argument regarding prejudice to his defense caused by amending the information is without merit. We hold that the trial court properly allowed the State to amend the information.

Judgment affirmed.

WEBSTER, A.C.J., and COLEMAN, J., concur.

Review granted at 118 Wn.2d 1027 (1992).