## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

     Respondent,

 v.

JAARSO AHMED ABDI,

     Appellant.

_____

STATE OF WASHINGTON,

     Respondent,

 v.

ABDUNASIR SAID,

     Appellant.

No. 73263-3-I

(Consolidated with
No. 73460-1-I)

DIVISION ONE

UNPUBLISHED OPINION

FILED: July 31, 2017

2017 JUL 31 AM 9:25

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

LEACH, J. — In this consolidated appeal, Jaarso Abdi and Abdunasir Said appeal their convictions for first degree attempted robbery against Halimo Dalmar and first degree unlawful possession of a firearm. Abdi and Said challenge the sufficiency of the evidence to support their convictions, the admission of evidence about a dismissed charge without a limiting instruction, the admission of evidence about postarrest lineup identifications made without counsel present, and the trial court's refusal to give a lesser included instruction on unlawful display of a weapon. Finally, the defendants contend the recent recidivism sentencing factor is impermissibly vague and the legal financial obligations should be stricken.

Said also filed a statement of additional grounds for review, but he asserts the same grounds as those presented by his attorney.

Finding no merit to defendants' arguments, we affirm.

Background

On December 30, 2013, Mohamed Ali and his wife, Halimo Dalmar, were at home with seven of their eight children. Abdi, Said, and Antonio Forbes knocked on the door and loudly demanded money. The family refused to open the door. They continued to watch from their home.

Ali saw the three men go to a car parked nearby. The men removed weapons from the trunk of the car. They then returned to the family's apartment and again loudly banged on the door while demanding money. When the family did not open the door, the men went around the house and starting attacking Michael Freeman, a nearby neighbor.

Dalmar, thinking the coast was clear, left the apartment to drive her son Mustafe to work. When both Dalmar and Mustafe were in the car, the men "attacked the car," demanding money. At the same time, Forbes pointed a gun at the window of the family's home where the children were.

A neighbor, roused by the noise, saw a man holding a gun and called 911. Muna, Ali and Dalmar's daughter, also called the police when the three men surrounded her mother's car. Seattle police responded within minutes of the 911 calls. The police

saw the three suspects matching the descriptions given on the 911 calls. The suspects fled. Abdi and Said were quickly caught and taken into custody. Forbes escaped.

Witnesses saw the men toss something into the trash can. The police later retrieved two guns from a recycling bin.

Both Ali and Dalmar identified Abdi and Said in separate lineups and explained their roles in the crimes. At a later date, Dalmar identified Forbes in a photo montage. Ali, Dalmar, and Muna all identified the three defendants in court as the attackers.

The State also charged Abdi, Said, and Forbes with two additional counts of first degree attempted robbery against Ali and Freeman. When Freeman did not appear to testify, the court granted the State's request to dismiss the count involving Freeman.

The jury convicted Abdi and Said of first degree attempted robbery against Dalmar and first degree unlawful possession of a firearm. The jury acquitted Said of the second count of first degree attempted robbery against Ali but could not reach a decision as to Abdi on that count. The jury could not reach a decision about Forbes's guilt on any count.[1]

In a bifurcated hearing, the jury decided that Abdi and Said had committed the crimes shortly after being released from incarceration. The court sentenced each to a standard range of 152 months in prison and imposed mandatory financial obligations.

Abdi and Said timely appeal.

---

[1] An inappropriate footnote in the State's brief on page 3 states that Forbes later pleaded guilty to attempted first degree robbery against Dalmar, admitting that he did so along with Abdi and Said. Because the record does not contain this information, this panel did not consider it.

## Analysis

### Attempted First Degree Robbery

Accomplice liability is not an element of or an alternative means of committing first degree robbery.[2] Thus, a "to convict" instruction for this crime that refers only to the conduct of the "defendant" and not that of the "defendant or an accomplice" does not require a jury to convict a defendant as a principal when the trial court also gives a general accomplice liability instruction.[3] Defendants acknowledge this general rule but claim that it does not apply in this case because of a difference in the wording of the "to convict" instructions for the two counts of first degree attempted robbery submitted to the jury. They contend that this difference required the State to present sufficient evidence to convict each of them as a principal for the count charging first degree attempted robbery against Dalmar.

The "to convict" instruction for first degree attempted robbery against Ali referred to "the defendant or an accomplice." The "to convict" instruction for first degree attempted robbery against Dalmar referred only to "the defendant." Abdi and Said contend that this difference would necessarily cause the jury to believe that they had to convict each as a principal in the crime against Dalmar. They reason that

> [a]n ordinary juror would ascribe significance to the difference in language, and consistent with that distinction, apply the general accomplice liability instruction to the count where the accomplice language was included in the "to convict" instruction (count 2 involving Mr. Ali) and not to the count where that language was omitted (count 1 involving Dalmar).

---

[2] State v. Teal, 152 Wn.2d 333, 338-39, 96 P.3d 974 (2004).
[3] Teal, 152 Wn.2d at 338-39.

And because the State presented insufficient evidence to convict either as a principal on the Dalmar count, they claim that this court must reverse those convictions. We disagree.

The defendants rely on State v. Willis.[4] There, our Supreme Court held that under the law of the case doctrine, the failure to include the phrase "or an accomplice" in the "to convict" instruction required the State to prove that Willis was guilty as a principal.[5] However, the Supreme Court opinion gives no indication that the jury received a separate general accomplice liability instruction. It also makes no mention of State v. Teal,[6] decided only four months earlier, where the same court held that a "to convict" instruction for first degree robbery that refers only to the conduct of the "defendant" and not that of the "defendant or an accomplice" does not require a jury to convict a defendant as a principal when the trial court also gives a general accomplice liability instruction.[7] Teal controls the result in this case.

Here, the court instructed the jury that they should consider each charged crime separately.[8] Additionally, the State charged the defendants as accomplices, and the trial court gave a general instruction defining accomplice liability. Neither defendant challenges the sufficiency of the evidence to prove accomplice liability.

---

[4] 153 Wn.2d 366, 103 P.3d 1213 (2005).
[5] Willis, 153 Wn.2d at 374-75.
[6] 152 Wn.2d 333, 338-39, 96 P.3d 974 (2004).
[7] Teal, 152 Wn.2d at 338-39.
[8] Jury instruction 7 provided in part, "A separate crime is charged in each count. You must separately decide each count charged against each defendant."

The jury instructions here are sufficient because when read as a whole, they are not misleading, accurately state the law, and allow each party to argue its theory of the case.

Sufficiency of the Evidence for Possession of a Firearm

A person commits first degree unlawful possession of a firearm by possessing or controlling a firearm after having been convicted of a serious offense.[9] Both Abdi and Said stipulated that they had previously been convicted of a serious crime.

To uphold a criminal conviction, this court must find sufficient evidence for a reasonable person to find the State has proved every element of the crime beyond a reasonable doubt.[10] We view the evidence in the light most favorable to the State.[11] A party challenging sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences from the evidence.[12] We defer to the trier of fact about conflicting testimony, witness credibility, and the persuasiveness of evidence.[13]

Here, sufficient evidence supports the jury's decision. Ali testified that he saw Abdi, Said, and Forbes retrieve weapons from the trunk of the car parked nearby. He testified that he saw weapons in their hands, pointing guns at his wife and son. Dalmar testified that she was afraid because the men at the car had guns. Testimony also placed Forbes standing apart by the window pointing a gun at her home. Ali identified

---

[9] RCW 9.41.040(1)(a).
[10] State v. Hartzell, 156 Wn. App. 918, 945, 237 P.3d 928 (2010).
[11] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[12] State v. Edwards, 171 Wn. App. 379, 401, 294 P.3d 708 (2012).
[13] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Abdi as #3 in the lineup and testified that he saw him holding a weapon. Ali also identified Said as #4 in the lineup and testified that he had a gun. When the police arrived, Ali saw the men running away, tossing the weapons into the trash.

Further, during the 911 call, Muna described a black man in his twenties with a silver gun wearing "a big silver kind of grayish jacket" and jeans. Abdi was arrested wearing a gray jacket. Forbes had no jacket, having left it on the car while Said, bald, was wearing a black jacket.

The neighbor who called 911 indicated that he saw three men, one of whom he thought was carrying a gun. In court, he testified that he could not say with certainty that what he saw was in fact a rifle, but the manner in which it was displayed and its size was compatible with a rifle. Various witnesses placed firearms with each of the defendants. Sufficient evidence supports the jury's firearm decisions.

Admissibility of Evidence

The defendants argue that they were entitled to a mistrial because the evidence presented about the assault on victim Freeman was unfairly prejudicial. Alternatively, they argue that the trial court should have granted their request for a limiting instruction telling the jury to disregard the evidence about Freeman's assault. The trial court found this evidence admissible both as res gestae and, in part, to establish identity.

This court reviews the trial court's decision to admit or exclude evidence for abuse of discretion.[14] A trial court abuses its discretion when it makes a manifestly

---

[14] State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014).

unreasonable decision or bases its decision on untenable grounds or reasons.[15] This court reviews the trial court's interpretation of an evidentiary rule de novo as a question of law.[16]

The defendants argue that the trial court should have excluded the testimony under ER 404(b). ER 404(b) bars the admission of evidence of prior bad acts for the purpose of showing a person's character or that the person acted in conformity with that character.[17] This evidence is admissible, however, if it is relevant and the court balances the danger of unfair prejudice with its probative value.[18]

Evidence is relevant to show the "res gestae" of a crime if it provides needed context for the jury to understand the sequence of events surrounding the crime.[19] In other words, this evidence "'is admissible [to] complete the story of the crime.'"[20] Washington courts characterize res gestae as an exception to ER 404(b)'s prohibition of prior misconduct evidence.[21] Evidence of prior misconduct is admissible as res gestae "'if it is so connected in time, place, circumstances, or means employed that proof of

---

[15] Gunderson, 181 Wn.2d at 922 (quoting State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)).

[16] Gunderson, 181 Wn.2d at 922.

[17] Gunderson, 181 Wn.2d at 922.

[18] ER 402, 403, 404(b).

[19] State v. Lane, 125 Wn.2d 825, 831, 889 P.2d 929 (1995).

[20] Lane, 125 Wn.2d at 831 (alteration in original) (internal quotation marks omitted) (quoting State v. Tharp, 27 Wn. App. 198, 204, 616 P.2d 693 (1980)).

[21] See Lane, 125 Wn.2d at 831; Tharp, 27 Wn. App. at 204.

such other misconduct is necessary for a complete description of the crime charged, or constitutes proof of the history of the crime charged."[22]

Here, the challenged evidence is relevant as res gestae and thus admissible under ER 402. The identity of the defendants and possession of weapons were critical issues at trial. From the upstairs window, Muna saw Forbes and Said assault Freeman, whom she described as "the neighborhood grass-cutter." She saw Said with a shiny object that she thought was a gun. When Muna went downstairs, she saw three men run up to her mother's car. She recognized two of those men, Forbes and Said, as the same men who had attacked Freeman just before. Muna called 911 because she felt her mother was in danger of being shot. During that 911 call, Muna described one of the men at her mother's car as a black man in his twenties with a silver gun wearing "a big silver kind of grayish jacket" and jeans. Abdi was arrested wearing a gray jacket. Muna's testimony described a continuing course of events and placed guns in both Said's and Abdi's hands. It was relevant to prove identity for the charged crimes.

Because the testimony had substantial probative value, the trial court did not abuse its discretion in declining to exclude the testimony under ER 403. The testimony helped to complete the picture of events happening that night. All adverse evidence is prejudicial; ER 403 addresses unfair prejudice, which "is caused by evidence likely to arouse an emotional response rather than a rational decision among the jurors."[23] The

---

[22] State v. Schaffer, 63 Wn. App. 761, 769, 822 P.2d 292 (1991) (quoting 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 115, at 398 (3d ed. 1989)), aff'd, 120 Wn.2d 616, 845 P.2d 281 (1993).

[23] Carson v. Fine, 123 Wn.2d 206, 223, 867 P.2d 610 (1994).

defendants' argument that the witnesses' characterization of Freeman as a sympathetic community member evoked such an emotional response that the jury could not disassociate it from the other victims is not well taken. The descriptions of Freeman as the neighborhood "yard guy" or an "old man" who cut the neighborhood grass do not evoke such an emotional response. These descriptions are not so incendiary that they would be "likely to arouse an emotional response" from the jury.[24]

Here, the challenged evidence was necessary to prove possession and identity, as well as to explain the sequence of events to the jurors. It was not unfairly prejudicial. The trial court did not abuse its discretion in admitting this evidence or by refusing to give a limiting instruction or declare a mistrial.

Lesser Included Offense Instruction

The defendants argue that they were entitled to an instruction on unlawful display of a weapon as a lesser included offense of attempted robbery. The trial court rejected the proposed instruction because the evidence did not suggest that any of the defendants were guilty of only the lesser offense.

In State v Workman,[25] our Supreme Court established a two pronged test to analyze whether a lesser included offense instruction should be given. A defendant is entitled to have a jury instructed on a lesser included offense when both the elements of the lesser offense are necessary elements of the offense charged and the evidence

---

[24] Carson, 123 Wn.2d at 223.
[25] 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).

supports an inference that the lesser crime was committed.[26]  Both prongs are necessary.  In addition, "the evidence must affirmatively establish the defendant's theory of the case—it is not enough that the jury might disbelieve the evidence pointing to guilt."[27]

No one disputes that the legal prong is met here.[28]  Under the factual prong of Workman, there must be particularized, affirmative evidence permitting a rational juror to find that the defendant committed only the lesser offense.  The trial court decided there was no basis to find that an unlawful display of weapons occurred.  Unrebutted evidence shows that the defendants demanded money at the same time guns were shown.  The defense theory of the case was that the State failed to prove that they touched a gun or attempted to rob anyone.  The trial court did not err in refusing a lesser included offense instruction.

Postarrest Lineup Identifications

The defendants challenge the admission of postarrest lineup identification evidence because neither defendant had counsel present at the lineup.  Abdi requested counsel shortly after his arrest, while Said had not asked for a lawyer.

Three days after the robbery the police had two witnesses, Ali and Dalmar, attend a lineup at which both identified Said and Abdi as the perpetrators and later gave

---

[26] Workman, 90 Wn.2d at 447-48.

[27] State v. Fernandez-Medina, 141 Wn.2d 448, 456, 6 P.3d 1150 (2000).

[28] RCW 9.41.270 provides that it is a gross misdemeanor to unlawfully carry or display a weapon in a manner that "manifests an intent to intimidate another or that warrants alarm for the safety of other persons."  Carrying a weapon is a necessary element of the greater crime of first degree robbery.

statements about the roles the defendants played in the incident. Experienced detectives testified that they complied with all the protocols involved in a lineup and that nothing unusual occurred. A public defender attended the lineup to advise an unrelated suspect who had been placed in the lineup next to Said for a witness in a different case. That public defender testified in pretrial that he saw nothing inappropriate in the lineup. The trial court found no irregularities or anything impermissibly suggestive about the lineups.

Because the police conducted the lineups before the State filed an information or started formal court proceedings, the defendants had no constitutional right to counsel at the lineups.[29] However, CrR 3.1(b)(1) provides for a lawyer at an in-custody lineup. Any error here results from a violation of a court rule, not a constitutional violation.[30] Thus, we apply a less stringent harmless error analysis.[31]

To succeed on this claim, the defendants must show that the lineup was unduly prejudicial. They have not. The testimony of the detectives and the other lawyer present at the lineup supports the trial court's ruling that the lineup was not unduly suggestive. Thus, any error in not having counsel there was harmless.

---

[29] State v. Woods, 34 Wn. App. 750, 760, 665 P.2d 895 (1983) ("The right to counsel at a lineup attaches only at or after the initiation of judicial proceedings. Moore v. Illinois, 434 U.S. 220, 227, 54 L. Ed. 2d 424, 98 S. Ct. 458 (1977); Kirby v. Illinois, 406 U.S. 682, 689, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972). This right does not attach until charges have been formally filed. State v. Lewis, 19 Wn. App. 35, 46, 573 P.2d 1347 (1978); State v. Knapp, 8 Wn. App. 825, 827, 509 P.2d 410 (1973)" (quoting State v. Haskins, 33 Wn. App. 185, 188, 654 P.2d 1208 (1982))).

[30] State v. Templeton, 148 Wn.2d 193, 217-19, 59 P.3d 632 (2002).

[31] State v. Robinson, 153 Wn.2d 689, 697, 107 P.3d 90 (2005).

Defendants next contend that counsel was ineffective for failing to timely object to hearsay that resulted in the admission of statements made after the lineup in which Ali stated that #4 (Said) "pointed guns at me & threatened to shoot me & robbed my neighbor at gunpoint, Mr. Michael Freeman." To show ineffective assistance of counsel, a defendant must show both that counsel's representation was deficient and that the deficiency prejudiced the defendant.[32]

ER 801(d)(1) provides that a "statement is not hearsay if . . . [t]he declarant testifies at the trial . . .and is subject to cross examination concerning the statement, and the statement is . . . (iii) one of identification of a person made after perceiving the person." The court in State v. Stratton[33] permitted statements that identified physical characteristics of a person perceived by a witness who testified. Stratton quoted Porter v. United States,[34] which held that details of the offense were admissible along with identification to the extent necessary to make identification understandable to the jury.[35] Here, the statements were admissible because the witnesses knew the identity of the defendants from the crime they committed. Because the statements were admissible, counsel was not deficient.

Even if we were to hold counsel deficient for failing to timely object, the claim fails. A successful ineffective assistance of counsel claim requires that the defendant show both that counsel's performance was deficient and that the defendant was

---

[32] State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).
[33] 139 Wn. App. 511, 517, 161 P.3d 448 (2007).
[34] 826 A.2d 398, 410 (D.C. 2003).
[35] Accord, Iowa v. Russell, 893 N.W. 2d 307, 317 (2017).

prejudiced thereby. The defendants cannot show prejudice, particularly where, as here, the witnesses testified to the same facts in open court and were subject to cross-examination.

Rapid Recidivism Aggravator

RCW 9.94A.535(3)(t) permits a court to impose a sentence outside the standard range for an offense if the jury finds beyond a reasonable doubt that a defendant committed the current offense "shortly after being released from incarceration." The defendants argue that the term "shortly after being released from incarceration" is unconstitutionally vague because it fails to define the term "shortly after being released from incarceration."

This court reviews de novo a challenge to the constitutionality of a statute. Because this challenge does not implicate the First Amendment, this court examines the statute as applied to the facts of the case to decide defendants' vagueness challenge.[36]

In State v. Williams,[37] this court held that RCW 9.94A.535(3)(t) was not vague as applied where the defendant had been released from jail 24 hours before an alleged assault. Here, Abdi had been out of jail for approximately 4 days while Said had been free for only 6 hours. The statute is not vague as applied to the particular facts here.[38]

---

[36] State v. Williams, 159 Wn. App. 298, 319, 244 P.3d 1018 (2011).

[37] 159 Wn. App. 298, 320, 244 P.3d 1018 (2011).

[38] We note that our Supreme Court in State v. Baldwin, 150 Wn.2d 448, 461, 78 P.3d 1005 (2003), opined that due process considerations underlying void-for-vagueness doctrine does not apply in the context of sentencing guidelines. See, however, Johnson v. United States, ___ U.S. ___, 135 S. Ct. 2551, 2557-58, 192 L. Ed.

Mandatory Legal Financial Obligations

Abdi claims, for the first time on appeal, that the mandatory DNA (deoxyribonucleic acid) fee under RCW 43.43.7541 and victim penalty assessment (VPA) under RCW 7.68.035 violate substantive due process when a court imposes them on an indigent defendant. He does not distinguish between the mandatory and discretionary fees.

This court squarely addressed these arguments in State v. Shelton,[39] holding that the defendant was procedurally barred from raising a substantive due process challenge to the DNA fees statute for the first time on appeal. This court held that the defendant's claim was not ripe until the State sought to enforce collection or sanctioned the defendant for failing to pay.[40] This court also held the defendant lacked standing because he could not show harm until the State sought to enforce the fee.[41]

As in Shelton, nothing in the record here indicates that the State has attempted to collect either fee or that it has imposed sanctions for failure to pay.[42] Thus, Abdi's as-applied substantive due process challenge is also not ripe for review.

---

2d 569 (2015), where the United States Supreme Court held that an increased sentence under the residual clause of the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)(2)(B), violated a defendant's right to due process because it was unconstitutionally vague.

[39] 194 Wn. App. 660, 674, 378 P.3d 230 (2016), review denied, 187 Wn.2d 1002 (2017).

[40] Shelton, 194 Wn. App. at 672-73. This court reaffirmed this holding in State v. Lewis, 194 Wn. App. 709, 715, 379 P.3d 129, review denied, 186 Wn.2d 1025 (2016).

[41] Shelton, 194 Wn. App. at 674 n.8.

[42] See Shelton, 194 Wn. App. at 673.

Moreover, Abdi lacks standing because he cannot show harm until the State seeks to enforce collection of the fees.[43] And RAP 2.5(a)(3) prevents him from raising his challenge for the first time on appeal because the claimed error is not "manifest" "[u]ntil the State seeks to enforce collection of the DNA fee or impose a sanction for failure to pay" and because "the record contains no information about future ability to pay the mandatory $100 DNA fee."[44] The same is true of the VPA.

When a court declines to address the merits of the challenge, it must consider the risk of hardship to the parties.[45] However, "the potential risk of hardship does not justify review before the relevant facts are fully developed."[46] The record here contains no facts regarding Abdi's future ability to pay.

Appellate Costs

Finally, the defendants ask this court to deny the State appellate costs based on their indigency. We generally award appellate costs to the substantially prevailing party on review. However, when a trial court makes a finding of indigency, that finding continues throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency."[47] Here, the trial court found Abdi and Said indigent. If the State has evidence indicating significant

---

[43] Shelton, 194 Wn. App. at 674 n.8.
[44] Shelton, 194 Wn. App. at 675; see also State v. Stoddard, 192 Wn. App. 222, 228-29, 366 P.3d 474 (2016).
[45] Shelton, 194 Wn. App. at 670.
[46] Shelton, 194 Wn. App. at 672.
[47] RAP 14.2.

improvement in Abdi's and Said's financial circumstances since the trial court's finding, it may file a motion for costs with the commissioner.

Statement of Additional Grounds for Review

Said submits a statement of additional grounds for review contending error in the jury instructions, ineffective assistance of counsel, and insufficient evidence. Counsel has already addressed these issues in his main appeal.

Conclusion

We affirm each defendant's judgment and sentence.

_Leach, J._

WE CONCUR:

_Mann, J._                    _Dwyer, J._