# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75569-2-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| TEKLEMARIAM DANIEL HAGOS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 6, 2017 |

2017 NOV -6 AM 11:20
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

BECKER, J. — Appellant Teklemariam Hagos, convicted of second and fourth degree assault, challenges pretrial rulings denying his motions to exclude statements he made before and after the assaults and to suppress the result of a show-up procedure. Finding no error, we affirm.

Based on allegations that Hagos assaulted two men with a knife, the State charged him with two counts of second degree assault while armed with a deadly weapon. Prior to trial, Hagos moved to exclude statements he made around the time of the assault and to suppress a show-up identification.

At the suppression hearing, the State's evidence showed that on February 4, 2016, Derval Johnson and Gregory Priessnitz stopped to get pizza in the Capital Hill area of Seattle. As they waited to order, they noticed a man mumbling to himself near the takeout window. Johnson attempted to make conversation with the man. The man replied, "'fucking faggots.'"

A short time later, as Johnson and Priessnitz were eating their pizza slices, the man suddenly knocked the pizza out of their hands. Johnson turned to find the man slashing at him and Priessnitz with a knife.

Bystanders waived down a passing patrol car driven by Seattle Police Officer Tyler Verhaar. Officer Verhaar looked to his left and saw a man, later identified as Hagos, swinging something metallic at Johnson and Priessnitz. Officer Verhaar turned on his overhead lights, and the man immediately began walking away from the scene. Officer Verhaar approached Johnson and Priessnitz who reported the assault and pointed toward Hagos. Officer Verhaar followed Hagos a short distance, never losing sight of him, and later located a knife a few feet from where the incident occurred. Priessnitz identified the knife as the one Hagos had in his hand.

Other officers arrived and detained Hagos at a nearby gas station. Hagos was "highly agitated, very angry," "yelling, swearing," accusing the officers of "putting things up his ass" and repeatedly calling the officers "faggot." During his transport to the precinct, Hagos told the transporting officer, "I'm going to fuck your wife." Several witnesses said Hagos' behavior suggested he was intoxicated or had mental health issues.

Officer Lydia Penate spoke with Priessnitz and Johnson at the scene. Both said they could identify the assailant. Officer Penate then took Priessnitz to the area where officers were detaining Hagos, shined a spotlight on Hagos, and

asked Priessnitz if he could identify him. Priessnitz identified Hagos without hesitation, saying he had the same face, same hat, and same outfit.

The trial court denied Hagos' motions to exclude statements and to suppress the show-up identification. A jury later convicted him of one count of second degree assault with a deadly weapon and one count of fourth degree assault. Hagos appeals the court's pretrial rulings.

## Motion to Exclude Statements Under ER 404(b)

Hagos first contends the trial court abused its discretion in admitting statements he made immediately before and after the assaults. Specifically, he contends the court should not have admitted testimony that he said "fucking faggots" just before the assaults, repeatedly called the arresting officers "faggots," told the arresting officers to "get out of my butt," and told the officer transporting him from the scene that "he wanted to fuck my wife." Hagos claims these statements were inadmissible under ER 404(b). We disagree.

ER 404(b) bars the admission of a defendant's other crimes, wrongs, or acts to show the defendant's character or that he acted in conformity with that character. State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). Such evidence is admissible for limited purposes, however, such as motive, opportunity, preparation, plan, knowledge, identity, or absence of mistake or accident. In addition, Washington courts recognize a "'res gestae' or 'same transaction' exception" to the restrictions of ER 404(b). State v. Lane, 125 Wn.2d 825, 831, 889 P.2d 929 (1995). The res gestae exception permits the admission

- 3 -

of evidence otherwise precluded by ER 404(b) "'if it is so connected in time, place, circumstances, or means employed that proof of such other misconduct is necessary for a complete description of the crime charged, or constitutes proof of the history of the crime charged.'" State v. Schaffer, 63 Wn. App. 761, 769, 822 P.2d 292 (1991), quoting 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 115, at 398 (3d ed. 1989), aff'd, 120 Wn.2d 616, 845 P.2d 281 (1993). Evidence that falls within an exception to ER 404(b) is admissible only if it also meets the requirements of ER 403, which allows the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." We review the admission of evidence under these rules for abuse of discretion. Gunderson, 181 Wn.2d at 921-22.

Applying these principles here, we conclude the trial court's decision was well within its discretion. We agree with the State that the challenged statements came within several exceptions to ER 404(b), including motive. Motive is an "impulse, desire, or any other moving power which causes an individual to act." State v. Powell, 126 Wn.2d 244, 259, 893 P.2d 615 (1995). Evidence of motive is admissible even when it is a not an element of the charged crime. State v. Yarbrough, 151 Wn. App. 66, 83, 210 P.3d 1029 (2009). Hagos' statements reflecting his hostility toward gay men in particular and his angry disposition in general demonstrated an animus or "moving power" relevant to the motive for the assaults. See State v. Finch, 137 Wn.2d 792, 822-24, 975 P.2d 967 (a defendant's hostile declarations toward victims or a racial group may be

-4-

probative of motive, intent, and state of mind), cert. denied, 528 U.S. 922 (1999); State v. Powell, 126 Wn.2d 244, 259-63, 893 P.2d 615 (1995) (recent events and statements involving the victim and the defendant were relevant to show ongoing hostilities between the two and were admissible as res gestae and to show motive).

The statements were also relevant to Hagos' intent—an element of both assault charges—and the assailant's identity. As the State points out, Hagos' defense centered on identity, intent, and voluntary intoxication. Hagos' statements were probative of each of these defenses.

Finally, the statements were also properly admitted as res gestae evidence. Assuming res gestae evidence is subject to the strictures of ER 404(b),[1] the statements in this case were "necessary for a complete description of the crime charged." The assaults were unprovoked and, absent the challenged statements, seemingly inexplicable. Hagos' state of mind and angry disposition around the time of the assaults were necessary to give the jury a complete description of the crime. See Powell, 126 Wn.2d at 263.

---

[1] Division Two of this court has held that res gestae evidence is "not 'prior misconduct' of the type generally inadmissible under ER 404(b)" and should be analyzed under ER 401, 402, and 403, not under ER 404(b). State v. Grier, 168 Wn. App. 635, 647, 278 P.3d 225 (2012), cert. denied, 135 S. Ct. 153 (2014); but see Lane, 125 Wn.2d at 831 (analyzing res gestae evidence under ER 404(b) but treating it as an exception).

## ER 403

Hagos argues alternatively that even if the statements were admissible under ER 404(b), they were inadmissible under ER 403 because their probative value was substantially outweighed by the danger of unfair prejudice. While the statements were highly prejudicial, they were also highly probative. A trial judge has considerable discretion in balancing the probative value of evidence against its potential prejudicial impact. State v. Hughes, 106 Wn.2d 176, 201, 721 P.2d 902 (1986); see also Finch, 137 Wn.2d at 824 (deferring to trial court where balancing under ER 403 presented close question). We cannot say the court here abused its discretion.

## Motion to Suppress Show-up Identification

Hagos next contends the show-up identification was so suggestive that it denied him due process. Again, we disagree.

A defendant claiming an identification procedure denied him due process must first show that the procedure was unnecessarily suggestive. Foster v. California, 394 U.S. 440, 89 S. Ct. 1127, 22 L. Ed. 2d 402 (1969). If the defendant makes that showing, the court then reviews the totality of the circumstances to determine whether the suggestiveness created a substantial likelihood of irreparable misidentification. Manson v. Brathwaite, 432 U.S. 98, 116, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). Relevant circumstances include the opportunity of the witness to view the suspect, the witness's degree of attention, the accuracy of the witness's prior description of the suspect, the

witness's level of certainty, and the time between the crime and the identification. State v. Linares, 98 Wn. App. 397, 401, 989 P.2d 591 (1999), review denied, 140 Wn.2d 1027 (2000); State v. Collins, 152 Wn. App. 429, 434, 216 P.3d 463 (2009), review denied, 168 Wn.2d 1020 (2010). When, as here, the trial court enters findings of fact and conclusions of law on the motion to suppress, we review the findings for substantial evidence and the conclusions de novo. State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006). Because Hagos assigns no error to the trial court's findings of fact, they are verities on appeal. Levy, 156 Wn.2d at 733.

The trial court found that Officer Verhaar saw Hagos "swing a metallic object within inches of the victims" and did not lose sight of Hagos at any point before detaining him. A video taken by a camera in Officer Verhaar's patrol car showed Hagos stepping away from the fracas as one of the victim's pointed at him. The video also showed Officer Verhaar leaving his car and following Hagos. During the showup, Hagos stood next to uniformed officers with his hands handcuffed behind his back. Officer Penate shined a light on Hagos and asked Priessnitz if he could identify him. Priessnitz immediately stated, "'that's him.'" The court also found that

> the witnesses had an opportunity to view the defendant and their attention was directed to him because of his behavior. Mr. Priessnitz paid particular attention to the defendant because he was concerned about the defendant and felt that he should keep his "eye on him." Mr. Priessnitz also pointed the defendant out to Officer Verhaar as the defendant was walking away from the scene. Finally, Mr. Priessnitz was confident in his identification that was only minutes after the incident.

Conclusion of Law 3(a); See State v. Marcum, 24 Wn. App. 441, 445, 601 P.2d 975 (1979) (findings of fact mischaracterized as conclusions of law are treated as findings of fact). Based on these findings, the trial court concluded the showup was "not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification." The court's unchallenged findings amply support that conclusion.

Hagos argues, however, that Priessnitz looked away during the attack, stood behind a person who blocked his view, and could have been influenced in his show-up identification by Officer Penante's statement that "she wanted him to identify the person they had arrested." Citing out-of-state authority, he also argues that Priessnitz's certainty regarding his identification does not make his identification more reliable. These arguments do not undermine the court's conclusion.

In addition to ignoring the court's unchallenged findings, Hagos' arguments ignore the evidence that Priessnitz's attention was drawn to Hagos before the assault, and that Priessnitz saw him knock the pizza from their hands and eat Johnson's pizza. Priessnitz thus observed Hagos for more than a moment and looked directly at his face. Consistent with that evidence, Priessnitz told Officer Penate prior to the showup that he could identify the assailant. He then proceeded to confidently identify Hagos based on his face, outfit, and hat. As noted above, the certainty of the identifying witness is a factor Washington

No. 75569-2-I/9

courts consider in determining whether an identification procedure created a substantial likelihood of misidentification.

Hagos' arguments also ignore Officer Verhaar's eyewitness testimony corroborating Preissnitz's identification of Hagos. And contrary to Hagos' assertions, Officer Penate did not testify that she wanted Priessnitz "to identify the person they had arrested"; rather she testified that she asked Priessnitz "if he could identify" a person they had "detained." Considering the totality of the circumstances, any suggestiveness in the showup did not create a substantial likelihood of irreparable misidentification.

In a statement of additional grounds for review, Hagos claims his trial counsel was ineffective for failing to let the jury know during argument "that the police officers did not read me my Miranda rights on the video shown in the courtroom by the officer." The record does not support this claim. The court ruled before trial that Hagos' statements to police were "spontaneously made by the defendant and were not in response to interrogation by the officers. Therefore, Miranda [v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)], does not apply." Conclusion of Law 2(a)(4).

Affirmed.

Becker, J.

Reach, J.

Cox, J.

- 9 -